DANIEL FITZPATRICK, APPELLEE, V. WALKER D. HINES, APPELLANT.

FILED SEPTEMBER 27, 1920. No. 21077.

1. Master and Servant: INJURY TO LOCOMOTIVE ENGINEER: NEGLIGENCE. It is negligence as a matter of law for the employees of a railroad company in charge of a work train, under orders to have the train in the clear on a side-track at a designated time and place where a regular, scheduled passenger train was due to pass. without stopping, to fail to observe such orders; and where through such negligence an engineer on the passenger train is injured the company is liable.

2. ———: ———: ———. It is also negligence *per se* for a work train to remain standing on the main-line track at a time and place a regular, scheduled passenger train is due to pass without stopping, without a flagman or other warning being given to the approaching train, as required by the rules of the company; and where through such negligence an engineer on the approaching train is injured the company is liable.

3. ———: ASSUMPTION OF RISKS. An employee, by entering and continuing in the employment of a master without complaint, assumes the ordinary risks and dangers incident to the employment, and the extraordinary risks and dangers which he knows or which by the exercise of ordinary care he would have known; but he does not assume the extraordinary risks caused by direct acts of negligence of his employer.

4. ———: CONTRIBUTORY NEGLIGENCE: FEDERAL ACT. Under the federal employers' liability act of April 22, 1908, 35 U. S. St. at Large, ch. 149, sec. 3, p. 65, providing that contributory negligence shall not bar a recovery, but shall be considered in abatement of recovery in accordance with the degree thereof, no degree of con-

tributory negligence, however great, will bar a recovery of any damages. It is only when the plaintiff's act is the sole cause—where the defendant's act is no part of the causation—that defendant is free from liability under the act.

5. ——: ASSUMPTION OF RISKS. A locomotive engineer upon a passenger train, although warned by a "permissive card" to "proceed expecting to find a train in the block," does not assume the risk of the negligence of the forward train, in failing to have the train in the clear on the siding, as required by the rules of the company, at a time and place where the passenger train was due to pass without stopping. Neither does he assume the risk of the negligence of the employees of the forward train in permitting their train to be standing on the main-line track at a time and place where the passenger train was due, without flagging or other warnings, as required by the rules of the company.

6. ——: ——: WITHDRAWAL FROM JURY. Under the evidence, the court properly withdrew the defense of assumption of risk from the jury.

7. Appeal: HARMLESS ERROR. Under section 7713, Rev. St. 1913, an error which does not affect the substantial rights of a party will not justify a reversal of a judgment.

8. Damages. A verdict for $28,800 for personal injuries sustained by a locomotive engineer 49 years of age, under the facts, held excessive, and a remittitur of $6,800 ordered.

APPEAL from the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Affirmed on condition.*

*Byron Clark, Jesse L. Root, R. T. York, F. A. Wright* and *J. W. Weingarten,* for appellant.

*M. F. Harrington* and *Gerald F. Harrington,* contra.

DAY, J.

Daniel Fitzpatrick brought this action in the district court for Sheridan county against the Chicago, Burlington & Quincy Railroad Company, under the provisions of the federal employers' liability act of April 22, 1908, to recover damages for personal injuries claimed to have been sustained by him on account of the negligence of the defendant. Later Walker D. Hines, director general of railroads under United States railroad administration, was substituted as party defendant. The trial resulted in

a verdict and judgment in favor of the plaintiff for $28,800, to review which the defendant has appealed.

The defenses interposed were assumption of risk and contributory negligence.

A brief statement of the facts will serve to make clear the application of the defenses urged. On September 10, 1918, the date of the accident, and for some years prior thereto, the plaintiff was in the employ of the defendant company in the capacity of a locomotive engineer, and on the day in question was operating the locomotive on train No. 43, a west-bound interstate passenger train. The plaintiff's run was between the division points of Seneca and Alliance in Nebraska, a distance of 108 miles. Alliance is a division station on the Burlington where the time is changed. Trains running east of Alliance are operated under central time, while those running west of Alliance are governed by mountain time, which is one hour slower than central time. Birdsell is a nonagency station about six miles east of Alliance, where passing and storage tracks are maintained. Still further east, approximately six miles, is the town of Hoffland, where a telegraph station is maintained. Passenger train No. 43 was a regularly scheduled train of the first class, having superior rights over trains of a lower class, and was due to pass Birdsell without stopping at 2:50 p. m., central time, and on the day and place of the accident was six to eight minutes late. An extra work train had been sent out from Alliance, and had taken a position on the main track about 1,000 feet east of the east switch at Birdsell, and was engaged in spotting cars to be loaded with gravel, and was so working at the time of the collision. The locomotive on the work train was on the east end of the string of cars with its nose fronting to the west, and was stationed just outside of a sharp curve in the main track still further to the east. This curve was in a side-hill cut, about 700 feet long, and for trains going westward was a left-hand curve. It was so sharp that, from the proper position of the engineer upon the right-hand side of the

locomotive going westward, the line of vision along the track was about 125 feet. From the fireman's side of the cab the line of vision was considerably further, so far in fact that a train standing on the track could have been seen for such a distance ahead that the train could have been stopped and the disaster averted. At the time of the accident, and immediately prior thereto, the fireman was engaged in shoveling down coal preparatory to firing the engine. The fireman was under the orders of the engineer and he could have directed him to have kept a lookout in going around this particular curve. On the day of the accident the plaintiff left Seneca with train No. 43 forty minutes late for his run to Alliance. At Hoffland the plaintiff was given a "permissive card" by the agent in charge of the station, which read as follows: "Block Station, Hoffland, 4:30 p. m. 9/10, 1918. Conductor and Engineman, train No. 43 on main track: Proceed, expecting to find a train in the block between this station and Alliance. Vining, Signalman." At the same time he was given a clearance card, addressed also to the conductor and engineman on No. 43, which read, "I have no—orders for your train. You have received no orders No. —. Stop signal is displayed for following trains. Block not clear. Vining, Operator." The last block for train No. 43 in its run to Alliance was the 12 miles between Hoffland and Alliance. As plaintiff's train came around the curve, before mentioned, and while running at 35 to 40 miles an hour, and at a point in the curve where his vision ahead was limited to 125 feet, he came suddenly upon the work train standing in the position before described. In that situation a collision was inevitable. Plaintiff reversed his engine, called to his fireman to jump, and threw himself backwards out of the cab window, receiving the injuries for which damages are claimed. Under the rules of the company, it was the duty of the crew operating the work train to have their train on the side track and in the clear at Birdsell at the schedule time of No. 43 leaving Hoffland, and also in case of standing on the main track that a flag-

man be sent out to warn approaching trains. This they omitted to do. This neglect was due to a misreading of the time. The engineer in charge of the work train was provided with a watch equipped with two hour hands, one gold one which marked central time, and one black which indicated mountain time. In taking note of the time he misread the hour. At the time he looked at his watch he sensed that he still had 40 minutes to get his train off the main track and in the clear at Birdsell siding, when in fact, concealed from view by the curve and cut, No. 43 was bearing down upon him. Under the rules of the company each of the men in charge of the work train had a duty to perform in the protection of the work train, which, if observed, would have avoided the accident. Singularly at this critical moment each of the crew failed in duty, resulting in this tragic disaster in which 11 persons were killed and 27 injured.

Under this state of facts the trial court took the position that a case of negligence on the part of the defendant had been made; that the facts did not present a question of assumption of risk, and submitted to the jury only the question of damages and contributory negligence.

That it was negligence on the part of the employees in charge of the work train to fail to have their train on the siding at Birdsell at the time No. 43 was due to pass that station without stopping, in violation of the operating rules, seems too clear for argument. That it was also negligence to permit the work train to be at rest upon the main track, at a time and place when No. 43 was due to pass, without a flagging or other warning being given as required by the rules, is equally true; especially so at a point in the road where the view was obscured by the curve and cut. The mistake of the crew of the work train to observe the duty imposed upon them by the rules is but another illustration of the fallibility of human agency. The engineer of the work train, in testifying as to how the accident occurred, said, "It was a slop over on my part, on the time, and we should have headed in at Bird-

sell;" and, again, "I became confused on the time, I was working on mountain time." The conductor and one of the brakemen were attempting to fix some telephone connections, assuming no doubt that the engineer would look after the siding of the train at the proper time. Upon this question of negligence it, does not seem that reasonable minds could differ, and under such circumstances it was within the clear province of the court to withdraw that issue from the jury.

It is strongly urged that the doctrine of assumption of risk under the facts shown preclude the plaintiff's right of recovery, and that the trial court should have so instructed the jury. The rule is now well settled, not only in this state, but elsewhere, that the employee assumes the usual and ordinary risks incident to the employment in which he is engaged, and which are known to him, or which by the exercise of reasonable care he would have known. The doctrine, however, does not go to the extent that the employee assumes the risk of the negligent performance of duty imposed upon the master or his agents. Cases supporting this doctrine can readily be found. A few are noted: *Bower v. Chicago & N. W. R. Co.,* 96 Neb. 419, which case was subsequently affirmed in *Chicago & N. W. R. Co. v. Bower,* 241 U. S. 470; *Chicago, B. & Q. R. Co. v. Shalstrom,* 195 Fed. 725, and cases cited, and note in 45 L. R. A. n. s. 387; *Chicago, R. I. & P. R. Co. v. Ward,* 252 U. S. 18; *Chesapeake & O. R. Co. v. DeAtley,* 241 U. S. 310.

In the discharge of his employment, so far as the doctrine of assumption of risk applies to the situation, the plaintiff had the right to assume that the other employees of the master would perform their full duty and comply with the rules promulgated for the operation of trains, and in a manner free from negligence. The "permissive card" which he received was a warning that he might proceed expecting to find a train in the block, but even this was not sufficient to warn him that the crew ahead might be negligent in their method of handling their train. The

plaintiff had a right to assume that, if for any reason the train ahead should be standing, the usual and customary warnings of torpedoes and flagging would be given. The plaintiff did not know that there was an unprotected work train standing on the main track in violation of the company's rules, or that the crew of the work train had failed in their duty to have their train on the siding at Birdsell. The notice he received was not such that by the exercise of reasonable care he would have known this situation. The testimony shows that passenger trains were operated under the "permissive-card" system, such as was given in this case, and that it frequently occurred that a train would be sent out while there was another train in the block. On this very trip another "permissive card" had been issued to the plaintiff for another block. From a careful consideration of all the facts we are of the view that the doctrine of assumption of risk does not apply in this case, and that the court was right in so ruling.

But, it is urged vigorously that the plaintiff's conduct in driving his locomotive around the curve at such a rate of speed that it was impossible for him to stop within the range of his vision ahead, and in failing to step over to the fireman's side of the cab where he could have seen the work train or to have directed his fireman to keep a lookout at that particular point, under the circumstances, was such gross negligence that he ought not to be permitted to recover. This argument is based upon the doctrine of assumption of risk, as well as upon contributory negligence. We have sufficiently observed that the facts do not bring the case within the rule of assumption of risk, for the reason that the cause of the accident was the negligence of the master's servants, and negligence of the master is not ordinarily one of the risks assumed. The distinction between assumed risk and contributory negligence is sometimes difficult to draw, but it is a distinction which must be borne in mind. Assumption of risk bars a recovery, while contributory negligence under the federal employers' liability act merely diminishes the amount of recovery.

Upon the question of contributory negligence the court, properly we think, instructed the jury that contributory negligence was not a complete defense, but should be considered in abatement of the damages in proportion to the amount of the plaintiff's negligence which contributed to the injury as compared with the negligence of the defendant. Cases involving this question have frequently been before the federal courts. In *Pennsylvania Co. v. Cole,* 214 Fed. 948, it is said: "But it is strongly pressed upon us that plaintiff's negligence in going to sleep in the caboose while on duty, and thus in failing to flag the following train, was negligence so gross and so proximate in its effect as to preclude all right of recovery. The danger to the interests of the traveling public from failure to enforce such rule is strongly urged. There can be no doubt, at the common law, such would have been the effect of plaintiff's alleged negligence; but the employers' liability act expressly abrogates the common-law rule under which action was barred by the negligence of the plaintiff proximately contributing to the accident, and substitutes therefor the rule of comparative negligence. Under this act, no degree of negligence on the part of the plaintiff, however gross or proximate, can, as matter of law, bar recovery; for, as said in *Norfolk & W. R. Co. v. Earnest,* 229 U. S. 114, 122, * * * the direction that the diminution shall be 'in proportion to the amount of negligence attributable to such employee' means that: 'Where the casual negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both.' "

In *Grand Trunk W. Co. v. Lindsay,* 201 Fed. 836, 844, it is said: "If, under the employers' liability act, plaintiff's negligence, contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted 'in whole or in part' from defendant's negligence, the stat-

ute would be nullified by calling plaintiff's act the proximate cause, and then defeating him, when he could not be
defeated by calling his act contributory negligence. For
his act was the same act, by whatever name it be called.
It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant
is free from liability under the act." Bearing on the general question, see *Louisville & N. R. Co. v. Wene,* 202 Fed.
887; *Hadley v. Union P. R. Co.,* 99 Neb. 349.

It is urged that the court erred in permitting to be
offered in evidence Exhibit D, which was a circular order
issued under date of November 5, 1918, and after the accident. This circular order recited that "Trains operating
under permissive card, form C, will run expecting to be
flagged, and at a reduced speed around curves and other
points where the view is obscured, so that they can be prepared to stop within a reasonable distance." In making
this offer, plaintiff's counsel stated that it was not offered
in support of the issue of negligence on the part of the
defendant, but for the purpose of meeting the charge of
contributory negligence on the part of plaintiff.

It has frequently been announced that the subsequent
conduct of a defendant in repairing a defect which was the
alleged cause of the accident could not be shown as being
in the nature of an admission of the negligence charged.
*Pribbeno v. Chicago, B. & Q. R. Co.,* 81 Neb. 657; *Tankersley v. Lincoln Traction Co.,* 101 Neb. 578. We fail to see
any distinction in principle whether the proffered testimony be offered for the purpose of showing negligence of
the defendant or contributory negligence of the plaintiff.
In both instances such testimony is inadmissible, and in
the instant case the testimony should have been excluded.
But, in view of the fact that the testimony offered related
to a question upon which the testimony was well-nigh
overwhelming in favor of the plaintiff, we think it falls
within the rule of error without prejudice. The plaintiff
testified, and was corroborated by other engineers on the
road, that when the "permissive cards" first came out the
instructions were that "we should slow up around curves;"

Fitzpatrick v. Hines.

that as a result the trains were late, and that the schedule could not be maintained; that later they were told to go ahead and make the speed; that the "permissive card" was intended as an extra precaution to look out for flagmen.

Under the provisions of section 7713, Rev. St. 1913: "An error which does not affect the substantial rights of a party will not justify a reversal of a judgment." *Huxoll v. Union P. R. Co.*, 99 Neb. 170.

A number of other questions are discussed, based upon the 23 propositions presented in defendant's brief, but the principal questions, as we view it, are the ones we have considered. The remaining assignments have been considered, but do not, in our opinion, present such a situation as calls for a reversal of the case.

Lastly, it is urged that the damages assessed are excessive, and that for that reason the judgment ought not to be permitted to stand. At the time of the accident the plaintiff was 49 years of age, and was earning $247 a month, under a recent advance in wages. The year prior he was earning $217 a month. His injuries, according to the testimony of his physicians, are permanent, resulting in what is usually termed "leakage of the heart," and in addition he suffered injuries to the nerves along the spine, which affected to a more or less degree the motor nerves. At the time of the trial, some six months after the accident, he was able to walk with the aid of a cane. All of the expert witnesses agree that the condition of the heart is incurable. The question as to whether the plaintiff's condition was due to the injuries received in the accident was a question for the jury.

We are of the opinion that the damages, in view of all of the circumstances proved, are excessive, and should be reduced $6,800. If plaintiff within 20 days files a remittitur of $6,800, leaving the judgment $22,000, the judgment will be affirmed; otherwise, it is reversed and remanded.

AFFIRMED ON CONDITION.

ALDRICH, J., not sitting.