Glarizio v. Davis.

---

MIKE GLARIZIO, APPELLEE, V. JAMES C. DAVIS, APPELLANT.

FILED JULY 13, 1923. No. 22458.

1. **Trial:** QUESTION FOR JURY. Whenever there is evidence of so positive and significant a character as, if uncontradicted, would support a verdict, it is the duty of the trial court to submit the case to the jury, under proper instructions. It is not the function of the court to weigh the evidence for the purpose of saying how the verdict should go.

2. **Master and Servant:** QUESTION FOR JURY. The trial court in this case committed no error prejudicial to defendant in submitting the case to the jury upon the doctrine of "the last clear chance," as applied to the charge of negligence submitted for their consideration.

3. **Damages.** The amount of verdict *held,* under the circumstances of this case, not so large that a remittitur should be required by this court.

APPEAL from the district court for Douglas county:
L. B. DAY, JUDGE.  *Affirmed.*

*J. A. C. Kennedy* and *Yale C. Holland,* for appellant.

*James C. Kinsler* and *Herman Aye, contra.*

Heard before MORRISSEY, C. J., LETTON and DEAN, JJ.,
BLACKLEDGE and COLBY, District Judges.

BLACKLEDGE, District Judge.

This is an action to recover for personal injuries
sustained by plaintiff, defendant's employee, in the
Missouri Pacific yards at Omaha, July 15, 1919.  De-
fendant was engaged and plaintiff employed in inter-
state commerce, and the case is governed by the pro-
visions of the federal employers' liability act.

The petition states a cause of action which would
authorize a recovery under the rule of the last clear
chance; it being alleged that, while the plaintiff was
engaged in his work in a place of danger, the defendant's
employees, who were conducting the movements of the
cars in question, saw him in such situation, and in danger
of being struck by the cars, but negligently failed to
stop the cars or give him any warning.  Defendant, in
addition to denials, pleads negligence on the part of
plaintiff, in that he was an experienced laborer in that
occupation, could easily have observed, and in fact
did see, the approach of the cars by which he was injured,
and assumed the risk of such movements, the same
being incident to his employment.

In addition to the argument that the trial court should
have instructed a verdict for defendant, the propositions
principally relied upon in this appeal involve the applica-
tion of the doctrines of assumption of risk and last
clear chance.  The trial court, in submitting the case
to the jury, told them as part of instruction No. 1:

"This, then, leaves for your consideration but one
question of negligence as to which and upon which the
defendant is liable, if at all, namely, the question as to
whether the trainmen in charge of said string of cars

saw or reasonably could have seen plaintiff in a place of apparent danger, unaware of his danger, and could have avoided the accident by the exercise of reasonable care, and by the prompt use of the instrumentalities at hand failed and neglected to do so. This is the plaintiff's claim as outlined in the first charge of negligence upon which, and which only, the defendant can be found liable, should you find it liable."

It also instructed, upon the question of assumed risk, to the effect that plaintiff assumed all the ordinary risks and dangers inherent in, or incident to, his employ- ment where the business of defendant was carried on with due care, but did not assume the risk of injury arising from a danger which was the result of negligence of defendant, unless such danger was known to him or was apparent or should in the use of ordinary care have been apparent to him, or to persons of his ex- perience and understanding. Other instructions defined negligence, ordinary care, proximate cause, and covered the matters of contributory and comparative negligence, measure of damage; and withdrew from consideration the question of failure to sound whistle or bell as dis- tinct grounds for a finding of negligence. It further instructed specifically that if the jury should find, as was the contention of the defendant, that plaintiff was injured while sitting in his wheelbarrow near the track, and that he knew the cars were approaching long enough in advance to have enabled him to move to a place of safety, then he had all the notice of the danger that a bell, whistle or other warning would have given him, and the giving of a warning signal was unnecessary.

The final weight to be dropped into the scale, and which, in this case, determines whether the award shall fall to the plaintiff or to the defendant, is the fact of plaintiff's personal location and position at and im- mediately prior to the infliction of the injury. As to this the theories of the two parties were conflicting and irreconcilable. The yard includes a number of tracks

extending in a northerly and southerly direction, connected by switches and crossovers, the easternmost known as the main line, the one next to it as the old main line, and, west of that, other tracks designated by name or number.

Plaintiff's duties were to gather up and remove pieces of paper, wood, iron, etc., which in the course of operations were dropped on and between the tracks, so as to keep the premises free from accumulations thereof. In this work he used, as his equipment, a wheelbarrow, broom and shovel. He had been in this employment in this yard five years.

Plaintiff contended that in the performance of his work he had approached from the west and was on the old main line facing southward, stooped over and in the act of edging his barrow over the east rail of this track, when, without warning, he was struck from the rear by the approaching cars. On behalf of defendant it was contended that plaintiff had previously crossed said track, and was seated in his barrow in the space between that track and the main line immediately east of it, facing northward—the direction from which the cars came—and hence must have seen them as they approached. As to the connected acts and details of movement of cars and persons, there is much conflict and confusion of statement, both as between the two sides of the case and as between the witnesses produced by either side themselves. It all happened very quickly. The switchman Downing, who, 25 feet from plaintiff, threw the switch which turned the cars in on this old main line track, says there was possibly 30 seconds from the time he got the signal to throw the switch until he saw plaintiff coming out from under the cars. Irving, who testifies to three different switching movements, says it was possibly 45 seconds or a minute, or less than that, from the first to the last, the last one causing the injury. This witness further states that, in the first of these

movements, plaintiff "was going to reach for something in the wheelbarrow, I judge. He was partly stooped over. I thought he was reaching for his broom or shovel." The engineer says he saw plaintiff during the whole time, and that he was sitting in the barrow east of the track.

There was ample evidence to sustain either theory, and we need not give further consideration to the argument that the case should have been taken from the jury. Whenever there is evidence of so positive and significant a character as, if uncontradicted, would support a verdict, it is the duty of the court to submit the case to the jury, under proper instructions. It is not the function of the court to weigh the evidence for the purpose of seeing how the verdict should go. *Mount Adams & E. P. I. R. Co. v. Lowery,* 74 Fed. 463.

It is urged that plaintiff assumed the risk of injury in this manner. The court, perhaps unnecessarily, submitted that question to the jury. This is true because, as appellant also here urges, the case went to the jury upon the question of the last clear chance. Now, the thing that gives rise to the last chance rule is not an ordinary or incidental risk which may be known and assumed. In the necessary sequence of events we have passed that stage before reaching the place where the last chance doctrine is to be applied. It is a condition of impending and unanticipated danger approaching one who is unaware, and which may be averted by another, by control of the dangerous force, or the giving of proper warning. It may arise from an unusual operation or from an ordinary operation. The point is, that the one in danger is unaware of it, and the master or his agent seeing the situation may, by reasonable and ordinary care and the use of the means at hand, avert an apparent and impending disaster to a human being.

However, defendant had the benefit of its submission, and of that cannot complain. It complains here, not

so much of the submission of the proposition, as that it was erroneously stated, in that the instruction, in effect, said the plaintiff did not assume a risk arising from defendant's negligence, which, counsel say, is bad law. There are cases in which so broad a statement of the rule would be improper. For example, the case cited by counsel, *Preble v. Union Stock Yards Co., ante,* p. 383. The negligence consisted in the nearness of the different tracks to each other, but with which situation the injured person was acquainted, and on which he had worked without objection for a considerable time. As applied to the case being tried, we think the language of the court was entirely correct. The supreme court of the United States has, we think, laid down the authoritative rule which governs this case, in *Chesapeake & O. R. Co. v. De Atley,* 241 U. S. 310, wherein it is stated:

"According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer, or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

Supporting the same rule are *Huxoll v. Union P. R. Co.,* 99 Neb. 170; *Fitzpatrick v. Hines,* 105 Neb. 134.

Appellant further argues that, the case being sent to the jury on the question of last clear chance only, if the evidence leaves no room for the application of the doctrine of last clear chance, then the verdict and judgment are without any foundation. This is based upon a consideration of the evidence, all of which we have examined as set out in the briefs, and in full as it is contained in the record. The jury determined the

facts adversely to defendant's present contention. We
believe there is hereinbefore set out a sufficient reference
to the issues and evidence to indicate the propriety
of the submission as made, and hold that appellant
has not just cause of complaint in reference thereto.
*Wilson v. Union P. R. Co.,* 107 Neb. 111. We reach the
same conclusion as to the alleged inconsistency between
the statement of the issues as given in the instruction
from which quotation is made herein and the one next
following which required plaintiff to establish by a
preponderance of the evidence "that the defendant was
negligent in some particular as alleged in the petition."

We do not consider it necessary to discuss in detail
the instructions requested by defendant. We have
examined all of them. Aside from those which were,
in effect, instructions directing a verdict for defendant,
they were mostly open to the criticism of improperly
commenting upon the evidence, and the weight which
should be given to it. We find that the trial court
reasonably and fairly covered by its instructions given
all essential issues involved under the pleadings and the
evidence in the case, including those represented by
defendant's requests in so far as they were proper and
material to go to the jury.

Finally, it is insisted that the amount of the verdict,
which was for $13,000, is excessive. The plaintiff at the
time of the injury was an experienced laborer in that
capacity, 62 years of age, of robust physique, and earn-
ing $3.20 a day. His right leg was severed between the
hip and the knee, and he complained still, two years
later, of suffering from the injury to his head. We
concede that the award was liberal, probably more
liberal than would be made by the same jury in the
same case at this time. The injury was sustained in July,
1919, and the verdict returned in May, 1921, which we
must recall was during the time when labor and all
other things were at war-time prices, which condition
probably to some extent affected the amount of the

verdict. Assuming that this was so, the plaintiff had the same right as others to have his financial matters adjusted on the current basis. He has, by the delays incident to legal procedure, been prevented during two additional years from receiving the amount found to be his due, and we do not find the amount so unreasonable that he should now by this court be required to accept a reduction.

The judgment of the trial court is

AFFIRMED.