(15 Misc. Rep. 196.)

## In re VAN HOUTEN'S WILL.

(Surrogate's Court, Rockland County.  December, 1895.)

1. WILLS—PROOF OF EXECUTION—TESTIMONY OF SUBSCRIBING WITNESSES.
    On an application for the probate of a will signed with a mark, one of the attesting witnesses testified that testator, the scrivener, and both attesting witnesses were together in testator's room; that the scrivener wrote something at a table, read it to testator, and then wrote testator's name; that testator held the penholder while his name was being written; that the scrivener then asked if it was his last will, and he answered by an affirmative nod; that witness was five feet from testator, and saw his name written, but did not see what mark the pen made while testator held it. The other witness gave similar testimony, stating that, while testator had his hand on the penholder, it made a scratching noise, as if the pen had caught in the paper. On the paper where testator made his mark was spattered ink, and indications that the point of the pen had caught in the paper. *Held*, that such testimony was sufficient to show that the will was signed by testator in the presence of the attesting witnesses.

2. SAME—EFFECT OF ATTESTATION CLAUSE.
    A will should be admitted to probate where the attestation clause and surrounding circumstances show due execution; though in direct opposition to the testimony of both subscribing witnesses.

Application for the probate of the will and codicil of George Van Houten, deceased.  Granted.

Frank Comesky, for executors.
Alonzo Wheeler and A. T. Fallon, for legatees.
Garrett Z. Snider, for contestant.

TOMPKINS, S.  George Van Houten died, at the age of about 84 years, on the 15th day of August, 1895.  On the 7th day of May, 1895, he executed the will now offered for probate.  On the 29th of May, 1895, the paper propounded as a codicil to the will purports to have been executed.  No objection is made to the will, but the probate of the codicil is objected to on the ground that it was not executed in conformity with the statute.

The contestant alleges:  First, that it has not been shown that the alleged codicil was subscribed by the testator in the presence of the attesting witnesses; second, that it does not appear that he acknowledged his subscription or execution in the presence of the attesting witnesses; third, that it has not been shown that the subscription was made in the presence of the attesting witnesses; fourth, that it does not appear that the testator declared the paper referred to as being the codicil of his last will and testament, and that it has not been shown that the testator, at the time of the alleged execution of the paper referred to, was of sound mind, or competent to make a will or codicil.

The last ground, viz. the incompetency of the testator, I understand, is not now urged; but the principal contention of the contestant's counsel is that the alleged codicil was not subscribed by the testator in the presence of the attesting witnesses, and that the testator did not acknowledge his signature, and did not declare the mark made by him to be his signature, and that the attesting witnesses did not see the signature made by the testator.

The signature of the testator upon the alleged codicil appears in the form of a cross mark between the Christian and surnames of the testator, which were written by Mr. Huested, who prepared the will. The witnesses to this paper were Deuel and Ranson. The testimony of Deuel as to what occurred at the time of the execution of the paper is, in effect, as follows:

He, Huested, and Ranson went into the room, where the testator was sitting, together. Mr. Huested did some writing at a table in the room, and went to Mr. Van Houten, and read what he had written. Mr. Huested held the pen and wrote the testator's name, and the testator held the penholder while Mr. Huested wrote. After the testator had hold of the pen in Mr. Huested's hand, Mr. Huested asked Mr. Van Houten if that was his last will and testament, or words to that effect. The testator answered by an affirmative nod of his head. Mr. Huested wrote the words "George Van Houten" opposite the seal upon the codicil. "I saw it in this way: I was sitting five feet from Mr. Van Houten. Mr. Huested had the paper and the pen and he did the writing while Mr. Van Houten held the pen. At that time I did not see what mark the pen made when Mr. Van Houten had his hand on it. I don't think I can swear whether the signature was made when Mr. Van Houten had his hand on the pen, or simply the cross mark. I am unable to say what mark or character of writing was made at the time Mr. Van Houten had his hand on the pen. At the time Mr. Van Houten had his hand on the pen, I think the paper was on a book held by Mr. Huested in his left hand, and he held the pen in his right hand, and Mr. Van Houten put his hand on the holder of the pen; but what mark was made I did not see, and cannot swear to. I was looking at Mr. Van Houten when Mr. Huested held the pen. When I signed the paper I did not observe the mark there,—did not look to see if it was there. I won't swear that, when I signed my name, that cross mark was there opposite the seal."

On the same subject the witness Ranson testified that:

"Mr. Huested asked the testator if we [meaning himself and Deuel] would do as witnesses to the codicil, and Van Houten replied, 'Yes.' Then Mr. Huested took the paper over to Mr. Van Houten, and took a book from a table, and placed it upon Mr. Van Houten's knees, and then Mr. Huested took the pen in his hands while I stood looking down on them. Then he asked him if he declared that to be his codicil to his last will and testament. He replied in the affirmative. Then Mr. Huested wrote, while Mr. Van Houten had hold of the pen. I cannot say what writing Mr. Huested did on this paper while Mr. Van Houten had the pen in his hands. I could not see the point of the pen. I could not see where the paper and pen came together." The witness was not positive as to who signed first. While the testator had his hand on the penholder the pen made a scratching noise, as if its point had caught in the paper. This witness testified that, to the best of his knowledge, all of the writing above the signature of himself and Mr. Deuel, below the fold in the paper, was there at the time he signed his name. "I saw his hand upon the pen, and the pen move as if making a mark, and I heard the pen scratch. I did not see the point of the pen. Mr. Van Houten's hand prevented it. I was about seven feet from him. The paper that I signed was the same paper that Mr. Van Houten wrote on. The paper was carried directly from the table to Mr. Van Houten. I saw Mr. Van Houten have the paper in his hands, and saw him place his hands or fingers upon the top of the pen, and saw the hand move over the paper, and heard the scratch made by the pen. I had no glasses on."

The witness' eyesight is poor, and while on the witness stand it was necessary for him to hold the paper from eight inches to a foot in front of his eyes in order to distinguish writing from the blank paper. The substance of the testimony of both witnesses is that, while they did not see the mark actually made upon the paper, and did not have their attention called to the particular mark or

writing placed upon the paper by Van Houten after it was made, or before or while they were making their signatures, they, nevertheless, did see the testator's hand upon the pen, and the pen, guided by Mr. Huested, pass over the paper, and Mr. Ranson heard the scratching sound, and was only prevented from actually seeing the mark made by Mr. Van Houten's hand resting upon the pen. It was all done in one room, these four parties all being present, the witnesses being about seven feet from testator when the mark was made, and there was no other paper present than the one signed by the witnesses; and they signed the same paper which they saw the testator make some mark upon, and which was declared by him to be a codicil to his last will and testament in answer to Mr. Huested's question.   There appears upon the paper where the mark was made spattered ink, and indications of the point of the pen having caught in the paper while the mark was being made.   This corroborates the testimony of Ranson, and the proponents claim that, at the time, in the presence of both witnesses, the mark was made by the testator.   Certain it is that some mark was made by the testator upon the paper while the testator's hands or fingers were upon the penholder.   No other mark appears anywhere upon the paper except that at the foot of the instrument, and immediately preceding the attestation clause, immediately after it was declared in the presence of both witnesses to be a codicil, etc., and they immediately signed their names at the foot of the same page upon which the mark appears.   The attestation clause is full and complete.   S. B. Huested, who drew the will and codicil, and who, while not a lawyer, had drawn a number of wills, and had had considerable experience in the execution of wills, testified fully and in detail as to what occurred and what was done at the time of the execution of the codicil.   After he had prepared the paper and read it over, "paragraph by paragraph," to the testator, the following occurred:

"We three [meaning the witnesses and himself] went into the room. I introduced Mr. Deuel to Mr. Van Houten as the teacher. I then sat down to the table and wrote the testamentary clause for the subscribing witnesses. Then I took a large book, and took it to Mr. Van Houten's chair, placing it before him, and wrote his name, and asked him to place his hand on the pen, and he took hold of the top of the pen, and I made the mark. I then went to the table, read over the testamentary clause to the witnesses, and they came to the table, and signed it there. After Mr. Van Houten had signed it, I asked him, 'You declare this paper to be your codicil to your last will and testament.' He said, 'I do.'. And 'You request Mr. Ranson and Deuel to sign as witnesses?' And his answer was, 'Yes.' After that I read the subscribing clause for the witnesses, and they signed it in Mr. Van Houten's presence." The following question was asked: "Q. Did he sign in their presence? A. He did."

I am satisfied that the statute was complied with, and that the paper was signed by the testator in the presence of the witnesses.   Where the attestation clause and the surrounding circumstances satisfactorily establish the due execution of the paper, it should be admitted to probate, even though it be in direct opposition to the testimony of both subscribing witnesses.   Trustees, etc.

v. Calhoun, 25 N. Y. 423; Rugg v. Rugg, 83 N. Y. 592. Here the attestation clause was complete, and stated all the formalities requisite to the due execution of the paper, and was read by Huested to them. The attestation clause is supported by the testimony of Huested. I am convinced that the testimony of the subscribing witnesses, unsupported by any other fact or circumstance, would require the probate of the paper. From their testimony it was signed in their presence by the testator. It would not be in accord with the meaning or spirit of the statute to hold that it was essential that the witnesses should actually witness the contact of the point of the pen and the paper in every case where the testator fails to acknowledge the signature as his signature. The rule is that, unless the witnesses are present when the paper is subscribed, and witness the subscription, they must see the signature, and hear it acknowledged by the testator to be his signature. In the cases cited by counsel for the contestant (Sisters of Charity v. Kelly, 67 N. Y. 409; In re Simmons' Will [Sup.] 9 N. Y. Supp. 352; Woolley v. Woolley, 95 N. Y. 231; and others) the witnesses did not see the testator make his signature, and probate was denied, either because the witnesses did not see the signature, or have it acknowledged to be such by the testator. They are not applicable here, because I hold that the physical act of making the signature was done in the presence of both witnesses, and was seen by them within the meaning of the statute, although they did not see the mark. I am satisfied that, when the witnesses saw Van Houten's hand upon the pen, and saw it move over the paper, and heard the scratching noise upon the paper, he (Van Houten) was in the act of making the mark which now appears at the foot of the instrument, and which stands for his signature. In Re Mackay's Will, 110 N. Y. 615, 18 N. E. 433, probate was refused because the signature was not made in the presence of the witnesses, nor did they see the testator's signature upon the paper, nor was any acknowledgment in respect to the subscription made by the testator.

The purpose of the statute and the several safeguards provided by it are to prevent perpetration of fraud. The testimony of witnesses before me renders it perfectly clear that the paper upon which Van Houten held and moved the pen was the same paper which he declared to be a codicil, etc., and the same paper signed by them and now offered with the will for probate, and that the mark now appearing at its foot was then made by him. With these facts so clearly appearing, no fraud can be accomplished by admitting the codicil to probate; but, on the contrary, great wrong would be done, and the testator's wishes and purposes would be thwarted, if it was refused probate.

Motion of contestant denied. Decreed accordingly.