IN RE ESTATE OF WILLIAM W. HOAGLAND.
MARGARET B. SHOTWELL, APPELLANT, V. FIRST NATIONAL BANK OF OMAHA ET AL., APPELLEES.

FILED MARCH 9, 1934. No. 28796.

George B. Thummel and Richard Mackey, for appellant.

Bryce Crawford, Jr., and Finlayson, Burke & McKie, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and BEGLEY, District Judge.

PAINE, J.

This action is founded upon a claim, filed against decedent's estate, upon a nonnegotiable promissory note, which recites, "For value received." The claim was rejected in the county court, and, upon appeal to the district court, trial was begun to a jury, but a judgment was entered discharging the jury and rejecting the claim.

William W. Hoagland, of Omaha, died December 9, 1931, and Margaret B. Shotwell filed a claim against his estate, founded upon a note executed by Hoagland, which read as follows:

"November 20, 1931.

"For value received I promise to pay to Margaret B. Shotwell the sum of fifty thousand dollars ($50,000.00) six months from date, with interest at 6%.

"In case of accident or death I request said Margaret B. Shotwell to present this promissory note to my executors.

"Margaret dear you have given me the only happiness I have ever known.

"W. W. Hoagland"

The executors filed many objections to the allowance of the claim in the county court. The county judge made an application to the county board to appoint a special county judge to hear these objections, and the county board, under authority of section 27-507, Comp. St. 1929, appointed L. J. TePoel as special county judge, with power to hear and determine said matter.

On June 6, 1932, an order was made in the county court, disallowing the claim, and it was stipulated that the cause should be tried in the district court upon the same pleadings. Upon January 9, 1933, a jury was duly impaneled in the district court, but at the close of the claimant's evidence the executors moved that the jury be discharged and judgment entered in their favor, which was accordingly done. The claimant appeals to this court on many grounds, among them being that the court erred in holding that the claimant had not made out a *prima facie* case.

The first evidence in the district court was that of Jay Fordyce Wood, of Chicago, as given in the county court. He testified that by profession he had been an examiner of disputed documents since 1910. He said he had read all the books published on the subject, and conducted a laboratory for such research. Bryce Crawford, Jr., admitted that upon request he had furnished Mr. Thummel with 26 checks, signed by W. W. Hoagland, which had been paid by the bank.

Mr. Wood then testified he had examined the promissory note under different degrees of magnification, and made photographs of it, and also photographs of the said 26 checks, a series of checks being photographed, with the signature on the note. He made answer to question No. 33 as follows: "My opinion was that the signature on plaintiff's exhibit number 1 was written by the same person who signed the name W. W. Hoagland to the checks, the signatures of which appear in enlarged form on exhibit number 4." Exhibit No. 1, of the county court, is the same as exhibit No. 2 of the district court, each referring to the $50,000 note in question. He testified that in his opinion the signature was made on the note, exhibit 2, after all of the typewriting had been completed.

The attorney for the executors consumed a great deal of time in the cross-examination of expert Wood in showing a fact plainly evident to the most casual observer, that the last two lines of typewriting in the note did not exactly line up horizontally with the other lines, showing that the old Underwood typewriter had slipped at one end in rolling up the paper, or that the paper had been adjusted, or possibly had been released, or even taken from the machine for a moment before completing. To enlarge upon this fact, a large-size photograph had been made for the executors, and upon five separate occasions attempts were made in vain by executors to get this photograph of theirs into the evidence. However, this photograph, not admitted in evidence, is printed as of page 13 of the appellees' brief, filed in this court. This statement

is made by them: "We feel that this question can be brought out more clearly. to the court by a copy of the note, which has been lined both horizontally and vertically and which will show conclusively that the first six lines are not in line with the last two lines." Then follows this naive conclusion: "Therefore, there is no proof that the signature W. W. Hoagland on the instrument is in fact a signature to the note itself."

The claimant, being disqualified under section 20-1202, Comp. St. 1929, was not called as a witness. Her daughter, Margaret C. Shotwell, testified to seeing Mr. Hoagland in a sitting-room at their home on November 20, 1931, being the date of the note; that he was sitting on a couch beside her mother, who had the note in her hand, and that he was there from just before noon, perhaps a quarter of 12, until he left, between 2 and 2:30 p. m.; that both had been crying; that her mother stated in the presence of Mr. Hoagland that she was very blue; that she handed her the note and said, "Look what Uncle Will has done." This witness also testified that she had called Mr. Hoagland "Uncle Will" for as many as 15 years; that she read the note through, and that it contained all of the typewriting now on it, and also contained the signature, "W. W. Hoagland," at that time. At the close of her evidence the claimant rested, and Bryce Crawford, Jr., made a motion to dismiss the case, stating among other grounds that there was no sufficient evidence, and that the court had not been given an opportunity to sufficiently scrutinize the claim, and that the note, on the face of it and in the testimony, is indicative of a gift of a promissory note, which is unenforceable, and for the further reason that the claim is against public policy and against public morals.

After argument, the trial court made the following ruling: "The instrument on which this claim is founded is not a negotiable note, nor, in my judgment, a nonnegotiable note. It is a mere promise on the part of the signer to pay an amount to the one who presents the

claim against the estate. This being the case, it is in no wise controlled or governed by the law of this state in relation to negotiable instruments. If it is a mere promise to pay, then the words 'For value received' are a mere admission against interest sufficient only to create a presumption that there may have been a consideration for the promise. This is insufficient. In my judgment proof of consideration is necessary. For this reason the motion of the defendant for a directed verdict will be sustained." From this statement we see that the trial judge treated it merely as a claim against the estate, and not as a nonnegotiable note.

1. An examination of this note shows clearly that it is a nonnegotiable promissory note under the law of Nebraska, and that the law relating to nonnegotiable instruments applies to this note. When this claim was filed against the estate of the maker of the note, the claimant was required, in the first instance, to support the claim founded upon the note by proof of its execution by the maker and delivery to the payee; that, in addition thereto, consideration must be proved, but in this case, as the note bears on its face the words "For value received," it was not necessary for the claimant to prove consideration in making out her *prima facie* case in the first instance; and it has been held that, even where the petition did not state that it was given for a consideration, these words import a consideration, and that even the allegation thereof was not necessary. *Baker v. Thomas,* 102 Neb. 401.

2. It has been held in this state that this court must assume the existence of every material fact favorable to the appellant, and give her the benefit of every reasonable inference therefrom, when the trial court has taken the case away from the jury at the close of her evidence and directed a verdict. *State v. Havel,* 120 Neb. 832; *Central Nat. Bank v. Ericson,* 92 Neb. 396; *Nothdurft v. City of Lincoln,* 66 Neb. 430. When the claimant has established such a *prima facie* case, it is error to take the case away from the jury and dismiss the claim. Did not the trial

court draw inferences from the evidence which were not borne out by any proof introduced before it?

Much was made in the argument of a blue picture-card, to which the note was pasted permanently, entitled "Sweetheart of Mine," and which had printed upon it a light, sentimental verse. Is this fact, taken into consideration with all the other circumstances surrounding the note, sufficient to rebut the presumption that there was a consideration for this nonnegotiable note?

The second objection filed in the county court charges that his physical and mental condition was such that he was incapable of entering into such a transaction. In the brief it states that he was an old man, within three weeks of death; yet, when the demand was made by the claimant's counsel to furnish genuine signatures to send to the Chicago expert on disputed documents, 26 bank checks were furnished by the executors, which had been signed by him, 23 of the checks being drawn upon his personal account and 3 checks drawn by him upon the corporation account of Geo. A. Hoagland & Co., and the evidence shows that all of these 26 checks were dated either November 17 or November 18, 1931, being within 3 days of the time that he signed the note in dispute, thus clearly showing that at about the date of the note he was mentally acute and able to conduct many transactions daily for himself, as well as transactions for his corporation, in the payment and settlement of the matters which these checks completed.

In the century-old case of *Dugan v. Campbell,* decided in the December term, 1823, 1 Ohio, 115, we have a note reciting "For value received," and these words: "Payable in the currency of this place, if the said Dugan does not take it out in store goods at the same rate." The court said: "It is not necessary to decide whether the note in this case is or is not negotiable, or to adopt or reject the principles of the cases cited on either side; for if it were not negotiable within the rules of decision, we should nevertheless consider it a promissory note, im-

porting in itself a consideration. * * * Although the writing thus executed may want words of negotiability, or may contain conditions that destroy its negotiable character, the promisee rests in security upon his written contract, as evidence of his claim, and preserves no other proof of the transaction upon which it was founded. By common consent, actions have always been brought and sustained upon such instruments without setting forth or proving the consideration. Were the court now to establish a different doctrine, great mischief might ensue."

In *McKnight v. Cornet,* 143 So. (La. App.) 726, it is held: "Only where suspicion is cast on reality of note by party pleading want of consideration does burden of proving consideration shift to plaintiff." In *Killeen's Estate,* 310 Pa. St. 182, the court said: "The suspicious circumstances which would warrant the court in casting the burden of proving consideration on the obligee of a sealed nonnegotiable note should be such circumstances as amount to fraud on the maker, and nothing short of fraud should have that effect. * * * The law presumes against fraud and in favor of innocence."

3. *Bourne v. Ward,* 51 Me. 191, held that if the note contained the words "Value received," the note itself will be evidence, not only of the promise, but *prima facie* of the consideration.

The claimant was only required, in the first instance, to make out a *prima facie* case. How is that term defined?

"*Prima facie* evidence means sufficient evidence upon which a party will be entitled to recover if his opponent produces no further testimony." *Eckman Chemical Co. v. Chicago & N. W. R. Co.,* 107 Neb. 268.

*Prima facie* evidence means evidence that warrants the inference, but does not compel it; that calls for explanation or rebuttal and may make a case to be decided by the jury, but does not convert the defendant's general issue into an affirmative defense. *Gallup & Co. v. Rozier,* 172 N. Car. 283; *Purity Ice Cream & Dairy Co. v. Adams Express Co.,* 217 Mich. 593.

A *prima facie* case is that which is received or con-

tinues until the contrary is shown, and one which in the absence of explanation or contradiction constitutes an apparent case sufficient in the eyes of the law to establish the fact, and if not rebutted remains sufficient for that purpose. *Gilmore v. Modern Brotherhood of America,* 186 Mo. App. 445.

The establishing of a *prima facie* case, that is, a case which has proceeded upon sufficient proof to that stage where it must be submitted to the jury and not decided against the plaintiff as a matter of law, does not shift the burden of proof or necessarily mean that the judgment goes in favor of the plaintiff as a matter of law, but the jury are still the judges of the sufficiency of the showing, having in view the fact that the plaintiff has the burden of proof. *Smith Sand & Gravel Co. v. Corbin,* 75 Wash. 635.

"A *prima facie* case is one in which the evidence in favor of a proposition is sufficient to support a finding in its favor, if all of the evidence to the contrary be disregarded." *Schallert v. Boggs,* 204 S. W. (Tex. Civ. App.) 1061.

Perhaps the best statement of a *prima facie* case is this: "Are there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?" 5 Wigmore, Evidence (2d ed.) sec. 2494.

The executors submit two New York cases, which they claim support the trial court in the case at bar. The first is the case of *Dougherty v. Salt,* 227 N. Y. 200, in which it was shown that an elderly aunt, in the presence of an eight-year-old boy, suddenly decided to make provision for him, and the evidence of the claimant discloses all of the facts of the aunt's inquiry in regard to his school work and of her desire to do something for him, and of her finally putting that desire in the form of a note. The evidence of the claimant excluded all thought of any consideration of any kind, and there certainly could not have been any transactions of a business nature be-

tween this child and his aunt on the occasion of this visit or prior thereto. She was not paying a debt, she was conferring a bounty, and it is held that nothing is consideration that is not so regarded by both parties. The facts in that case justify the disposition made by Judge Cardozo.

The other New York case, involving the same questions, is that of *Blanshan v. Russell*, 32 App. Div. 103, 52 N. Y. Supp. 963, in which case it appears that Mr. De Witt executed and delivered to claimant a promissory note, which contained the recital "For value received." Upon trial of the claim, the plaintiff introduced testimony that the note was signed on the same day the maker of it died, and was given to her with the statement that "he had given her the note as a reward for what she had done for him."

It is quite evident that neither of these cases presents a situation like the case at bar.

This court has recently held that "presumptions and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference." *Lebs v. Mutual Benefit Health & Accident Ass'n*, 124 Neb. 491.

We find a discussion in 3 R. C. L. 924, 925, secs. 121, 122, which sets out that it is fundamental that an instrument given without consideration does not create any obligation at law or in equity in favor of the payee, but that bills of exchange and promissory notes are distinguished from all other simple contracts in regard to the proof of consideration, as it is an established principle that such instruments import a consideration; in other words, the law presumes a consideration, and proof thereof is unnecessary in the absence of evidence to contradict the presumption.

In 35 A. L. R. 1372, in discussing the burden of meeting a *prima facie* case, it says: "Whatever may be the true rule as to the burden of proving want of consideration in the sense of the risk of 'nonpersuasion,' there is no doubt that the defendant has the burden, in the sense

of going forward with the evidence and rebutting the *prima facie* case as to consideration, made out by the production of the instrument and its introduction into evidence."

This court has said that where evidence if uncontradicted would support a verdict, it is the duty of the court to submit the case to the jury. "It is not the function of the court to weigh the evidence for the purpose of saying how the verdict should go." *Blackwell v. Omaha Athletic Club,* 123 Neb. 332; *Glarizio v. Davis,* 110 Neb. 679. It is the function of the jury to weigh the evidence, and not the prerogative of the court.

We are led to the conclusion that the trial court erred in summarily taking this case from the jury and dismissing the same.

REVERSED AND REMANDED.

GOSS, C. J., and GOOD, J., concur in the result.