MCWILLIAMS ET AL. *v.* THE CENTRAL TRUST CO. ET AL.

(Decided April 22, 1935.)

Messrs. *Fitzpatrick & Quane*, Mr. *Gilbert Bettman* and Mr. *Arthur J. O'Connell*, for plaintiffs in error.

Messrs. *Paxton & Seasongood*, Messrs. *Dempsey & Dempsey* and Mr. *Robert B. Goldman*, for defendants in error.

CARPENTER, J. On November 28, 1931, Corneal J.

McWilliams made and executed a will, by which, after some specific gifts, he gave all his property to The Central Trust Company of Cincinnati in trust for his two sons, John and Paul, until each arrived at the age of twenty-eight years. That company was also made executor of testator's will, and he directed the executor-trustee to employ the law firm of Dempsey & Dempsey as its counsel.

November 30, 1933, McWilliams was ill and was taken to a hospital for treatment. At first he seemed to improve, but later he declined and died on the evening of January 8, 1934. The autopsy disclosed to the doctors in charge that an abscess on the liver caused his death.

In the afternoon of January 7, 1934, the day before he died, McWilliams, by mark, signed a codicil to his will substituting Arthur J. O'Connell as executor and trustee in place of The Central Trust Company, and Dempsey & Dempsey as attorneys for the estate and trust. No other changes were made in the provisions of the will.

Application to probate the will and codicil was made by the sons of the testator. At the hearing, counsel for The Central Trust Company and for Dempsey & Dempsey were permitted to cross-examine the three attesting witnesses and the physician who attended Mr. McWilliams, who was also offered as a witness by the proponents. After an extended hearing, the Probate Court refused to admit the codicil to probate, and the sons and Arthur J. O'Connell appealed to the Common Pleas Court. There, a more extended hearing was had, and two more witnesses were called by the proponents. Over the objection of the appellants, counsel for the trust company was again permitted to cross-examine the witnesses at great length. The bill of exceptions contains 176 pages of testimony.

The Common Pleas Court found that "Corneal J.

McWilliams at the time of the alleged execution of said alleged codicil was not of sound mind and memory and was not free from restraint,'' and that ''said paper writing was not and is not a codicil to the last will and testament'' and ''should not be admitted to probate.'' To this order, the proponents prosecute error to this court.

The issues in this matter challenge our inquiry into the nature of the proceeding to probate a will, as distinguished from a will contest proceeding.

In an examination of the various related matters in the chapter of the Probate Code on probate of wills, three provisions other than the sections immediately involved in this matter attract attention.

On application for probate of a will under Sections 10504-15 and 10504-16, General Code, ''persons interested in its probate may contest the jurisdiction of the court to entertain the application.'' Before hearing of such contest notice thereof must be served on ''all parties named in such will,'' and, on the hearing, parties may ''call witnesses and be heard upon the question it involves.'' This results in an adversary proceeding on the issue of jurisdiction.

When application is made for probate of a lost, spoliated or destroyed will, another course of procedure is necessary. Sections 10504-35 to 10504-40, General Code. Notice must be given not only to ''the surviving spouse and to the next of kin,'' but also ''to all persons whose interest it may be to resist the probate, known to reside in the county'' (Section 10504-36, General Code); but only witnesses desired by ''any persons interested in having it admitted'' can be called, and these ''shall be examined by the probate judge.'' Section 10504-37, General Code. The court must be *satisfied* by the proof that the will was executed as required by law, and if it was lost or destroyed before the death of the testator his lack of

knowledge of such loss must "be proved *by clear and convincing testimony.*" (Italics ours.) Section 10504-38, General Code. Also, if a will admitted to probate is destroyed before recorded, after notice "to persons whose interest it may be to resist the probate and record," hearing may be had, and the court, "if satisfied the contents of the will have been substantially proved," may record it. Section 10504-39, General Code.

These provisions are of interest in the matter in hand only in so far as they by contrast shed some light on the procedure provided for a will or codicil such as this. Here only the witnesses to the will, and such others as "any person interested in having it admitted to probate," can be called, who "shall be examined, and may be cross-examined, in open court." Section 10504-18, General Code. The requirements then fixed for the Probate Court are set out in Section 10504-22, General Code, and are as follows:

"*If it appears* that such will was duly attested and executed, and that the testator, at the time of executing it was of full age, of sound mind and memory, and not under restraint, the court shall admit the will to probate." (Italics ours.)

The right to appeal to the Court of Common Pleas is provided for only when probate is refused, and then "the court, on the hearing, shall take testimony *touching the execution* of such will and have it reduced to writing." (Italics ours.) Section 10504-31, General Code.

While the range of consideration before the Common Pleas Court, as stated in the last quoted section, is no doubt the same as that before the Probate Court as directed by Section 10504-22, General Code, quoted above, the specific mention of "*touching the execution*" indicates the restricted meaning intended, for "*it appears*" in that section. This restriction is espe-

cially emphasized by comparison with the broader power conferred when there is an issue as to jurisdiction, or to establish a lost will.

The nature of the probate proceeding was discussed by the Supreme Court in *In re Hathaway*, 4 Ohio St., 383. Two matters of interest here were definitely settled in that case:

1. "An application to admit a will to probate is not an adversary proceeding."

2. "The evidence required, must show a *prima facie* case in favor of its validity."

What is now Section 10504-22, General Code, quoted above, was at that time in the same form. (50 Ohio Laws, 299.)

Looking to the statutes on the contest of wills we find an adversary procedure laid down. All parties, devisees, heirs and executors and "other interested parties" are required to be made parties and summoned. "An issue must be made up," and "on the trial of such issue, the order of probate shall be prima facie evidence of the due attestation, execution and validity of the will or codicil." Sections 12080 to 12083, General Code. This provision is consistent with the probate requirements as indicated in the *Hathaway case, supra;* that is, that a *"prima facie* case in favor of its validity" must be shown. The contest begins just where the probate stops.

From this the conclusion arises that all that can be required on probate is *"a prima facie* case," and when such "appears" by substantial evidence the duty is mandatory on the part of the probating court to admit the will to probate. This is evidenced by the words of the statute, "the court *shall* admit the will to probate." (Italics ours.)

But what is a *prima facie* case? It has been defined many times by the courts where various relationships were under consideration. "A *prima facie* case is one

in which the evidence in favor of a proposition is sufficient to support a finding in its favor, if all of the evidence to the contrary be disregarded." *Schallert* v. *Boggs* (Tex. Civ. App.), 204 S. W., 1061.

It has also been defined as that state of facts or proof which entitles the party to have his case go to the jury. *Commonwealth* v. *Kimball,* 41 Mass., 359, 35 Am. Dec., 326; *Millar* v. *Semler,* 137 Ore., 610, 3 P. (2d), 987; *Welsh* v. *Creech,* 88 Wash., 429, 153 P., 355, L. R. A., 1918A, 353.

Here, by analogy, we have the test for a probate proceeding. If the matter is one to be submitted to a jury, and sufficient evidence is offered on all the issues to send those issues to the jury, we have a *prima facie* case, even though there may be some parts of the testimony of the proponent's witnesses which tend to negative one or more of the essentials to be established.

From the whole scheme of the probating procedure in its various phases, as hereinbefore outlined, we conclude that in a case such as the instant one it is not the duty of the Probate Court to weigh the evidence for or against the validity of the will, except to determine that there is substantial evidence offered tending to show all the things required by the statute to "appear." To weigh the evidence pro and con is the function of the jury in the contest proceeding. If the Probate Court were to do so also, we would have an inconsistency similar to that mentioned in the *Hathaway case, supra,* at page 386:

"If those who deny the validity of a will had the right to send for witnesses, and contest it on the application to admit it to probate, the statute would run into the absurdity of allowing a party two distinct courts, and two distinct modes of contesting and having an adjudication of the same fact; and the adjudication of the first tribunal, although not appealed from, no bar to the second proceeding. Before probate, a

will is without any legal effect, and can not even be made the subject of a proceeding to contest it."

In New York, where the practice is similar to that in Ohio, it has been held that a will may be admitted although in direct opposition to the testimony of both subscribing witnesses. *In re Van Houten's Will,* 15 Misc. Rep., 196, 37 N. Y. Supp., 39.

A very liberal practice has prevailed among Probate Courts in Ohio, as indicated in the following opinions: *In re Will of Ludlow,* 6 O. D. (N. P.), 344, 4 N. P., 155; *In re Will of Stacey,* 6 O. D. (N. P.), 499; *In re Will of Stocker,* 26 N. P. (N. S.), 112.

In the instant case the record discloses substantial evidence by which "it appears" that all the elements required by Sections 10504-22 or 10504-31, General Code, were shown.

Our conclusion is that a *prima facie* case having been made as to the validity of the codicil, the duty to order it to be admitted to probate was mandatory on the Common Pleas Court. That not having been done, the judgment of the Court of Common Pleas will be reversed and the cause remanded with directions to that court to order probate of the codicil, and to remand the case to the Probate Court in accordance with the provisions of Section 10504-31, General Code.

It is true the statute now permits cross-examination of the witnesses offered by proponents on the application to probate, indeed such right has always existed, but we think this hearing took on too wide a field. Looking to Sections 10504-24 and 10504-31, General Code, we find that it is there required that "the testimony shall be recorded in the probate court." This would hardly seem to contemplate a 176 page record of testimony.

Some question is raised whether the executor-trustee is such person in interest as has a right to appear and cross-examine and thereby resist the application;

but in view of our conclusion on the other issues we do not regard it necessary to decide that matter.

In most cases where such matters as this have been before the courts the proponents have been strangers to the family of the testator; or some branch of his family has been hostile to another not favored in the will. Here it is not so. The sons and only next of kin of testator, the only persons having a substantial interest in the estate, are the proponents. Those resisting are the executor-trustee and the will-designated attorneys.

*Judgment reversed and cause remanded.*

LLOYD and OVERMYER, JJ., concur.

Judges LLOYD, OVERMYER and CARPENTER, of the Sixth Appellate District, sitting by designation in the First Appellate District.