IN RE WILL OF FISHER: FISHER, APPELLANT, *v.*
SOMMERER, APPELLEE.

(Decided March 10, 1941.)

*Messrs. Fraser, Effler, Shumaker & Winn,* for appellant.

*Messrs. Streicher, Gorman & Jenne,* for appellee.

CARPENTER, J.   The Probate Court denied an application to admit to probate the will of Elizabeth H. Fisher on the ground that the evidence failed to establish its due execution.   From this order the proponent took this appeal on questions of law.

In company with her brother-in-law, who was her

attorney and had prepared the will for her, and who was a beneficiary under it, Mrs. Fisher went to the home of a friend, Helen D. Pilliod, who, with her mother, signed the paper as witnesses. They both testified that she asked them in substance: "Will you be a witness to my will?" and the attorney produced the paper and asked her in the presence of both witnesses: "Is this your will?" and she said "This is my will."

Neither saw her signature on the paper, but one of them said she saw some writing, "not printing," on it. The instrument they signed was entirely typewritten except the three signatures. In brief, this was the only evidence the Probate Court considered.

Section 10504-3, General Code, tells us how a written will must be made, as follows:

"Such will shall be signed at the end by the party making it, or by some other person in his presence and by his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature."

In *McWilliams* v. *Central Trust Co.*, 51 Ohio App., 246, 200 N. E., 532, the judges of this court sitting in Hamilton county, said that in a proceeding to probate a will, it is mandatory upon the court to admit the will when a *prima facie* case is made, and that it is not the duty of the court to weigh the evidence further than to determine that substantial evidence has been presented on the facts necessary for the probate of the will.

Did the evidence considered by the court meet that requirement? Whether it had been signed by Elizabeth H. Fisher when the witnesses signed it, might be questioned. Whether the writing one of the witnesses saw was her signature is uncertain. If it was, the acknowledgment of it as described by the attesting witnesses was sufficient to make the *prima facie* case. The law does not prescribe the form in which such an

acknowledgment must be made. *Raudebaugh* v. *Shelley*, 6 Ohio St., 307, 316; *Haynes* v. *Haynes*, 33 Ohio St., 598, 31 Am. Rep., 579; *Eggleston* v. *Gardner*, 16 C. C. (N. S.), 455, 31 C. D., 627.

It is urged that these decisions are not applicable now because the last two words of the above-quoted section were then "the same" instead of "his signature." This is a distinction without a difference—the words "the same" referred to the testator's subscription.

The statute was in its present form when *Blagg* v. *Blagg*, 55 Ohio App., 518, 9 N. E. (2d), 991 (motion to certify overruled March 24, 1937), was decided. The testator had signed the will before he presented it to the witnesses. To one he merely said "Will you put your signature on this paper?" That person did not know and was not told what the paper was, nor did he recall whether the testator's signature was on it. The other witness, the second to sign, knew the paper was a will and saw testator's signature on it, but to her he merely said "Will you witness this?" Neither witness saw him sign, nor did he expressly acknowledge to either it was his signature. This was held to be sufficient evidence of execution and acknowledgment, and the *Raudebaugh* and *Haynes cases* were cited in support of the ruling.

In the case at bar the proponent offered the testimony of her attorney who had previously prepared the instrument for the deceased. He testified fully and was cross-examined and then the court struck all of his testimony from the record. He told of two conversations with Mrs. Fisher the evening the witnesses signed, one at his home and later when he went with her to the home of her friends, the witnesses. His version of what she said there is much more specific as to her acknowledgment of her signature. Lawyer-like, in the presence of the witnesses, he told her to tell the witnesses what the paper was and whether the signa-

ture was hers, and she said: "This is my will, I want you to be witnesses to. I have already signed it, and I got bawled out for it, and that is my signature at the end of it."

After this testimony was given, it was stricken out as incompetent by the court "on the authority of *Collins* v. *Collins*," evidently referring to 110 Ohio St., 105, 143 N. E., 561, 38 A. L. R., 230, wherein the witness was the attorney for the testator and a beneficiary under the will, and both relationships to the matter are discussed in the opinion. The decision was that the witness was incompetent. The record in the instant case does not disclose whether the court's ruling on the competency of this witness was based on the fact he was a beneficiary or the attorney for the testatrix and disqualified by Section 11494(1), General Code, because his communications with her were confidential. As the *Collins case, supra,* expressly does not decide the question as to the beneficiary relationship, it would seem the trial court's allusion to that case had reference to the attorney feature.

In the *Collins case,* revivor of a revoked codicil to a will was sought to be established by the testimony of the one witness who was the testator's attorney but was not an attesting witness to the codicil in question. His professional conversations with the testator were not in the presence of a third person and were therefore confidential and privileged. Communications between an attorney and client in the presence of a third party are not confidential, hence not privileged. *Whigham* v. *Bannon, Admr.,* 21 Ohio App., 496, 506, 153 N. E., 252. In *Foley* v. *Poschke,* 137 Ohio St., 593, 31 N. E. (2d), 845, this "general rule" is recognized but it is there said it does not apply when the "third person is the agent of either the client or the attorney."

The conversation had with Mrs. Fisher at the Pilliod home was not confidential and hence not privileged. The very purpose of going there was to give publicity

to the formality of the execution of the will, and that there be present witnesses who could testify as to what was done and said. The rejection of this evidence was prejudicial error.

In the ordinary case a reviewing court cannot base its judgment on evidence erroneously stricken out in the trial court, but can only order a new trial that such evidence may be presented and weighed with other evidence by the fact-finding tribunal.

Section 10504-18, General Code, which says what witnesses may be heard by the court, does not permit the introduction of evidence by the opponents of probate (*In re Hathaway*, 4 Ohio St., 383), and all the proponents need to do is make a *prima facie* case.

With the competent testimony of the attorney, which was stricken out, all of the facts necessary to admit the will to probate were before the court and a *prima facie* case was made and it was the mandatory duty of the court to grant the application. In the face of this rather unusual situation, it would be an idle ceremony to remand this cause for a new trial. Accordingly, the judgment is reversed and the judgment of this court is that the will be admitted to probate.

*Judgment reversed and final judgment for appellant.*

OVERMYER and LLOYD, JJ., concur.