**HALTERMAN, WILL OF, In Re.**

Probate Court, Jackson County.

Decided May 3, 1943.

M. M. Carlisle, Jackson, for Walter C. Wiseman, proponent.

## OPINION

By SLAVENS, J.

An instrument, appearing on its face to have been executed with all formalities of a. will and purporting to be the last will of Margaret Halterman, deceased, was offered for probate in this court and the same came on for hearing on March 31, 1943.

Robert K. Schellenger, one of the subscribing witnesses to said instrument, testified as to the proper execution of the instrument as a last will and testament, by the testatrix and the subscribing witnesses.

Juanita Terry, the other subscribing witness, was then examined, and this examination disclosed that at the date the purported will was executed, May 26, 1939, she was then thirteen years and two months of age.

Her testimony further revealed that at that time this instrument was executed, she accompanied Margaret Halterman, the testatrix, her great aunt, to the office of Mr. Schellenger, the other subscribing witness, and following, herewith, is a copy of her testimony in reference to the execution of the instrument.

By MR. CARLISLE:

Q. At that time you were supposed to have signed the Will of Margaret Halterman as a witness?

A. I remember going up there; it wasn't a Will I was told I was signing.

Q. What were you told you were signing?

A. A deed for cemetery lots.

Q. Who told you that?

A. Mrs. Halterman.

Q. Who all was present?

A. When I signed it?

Q. Yes.

A. Aunt Margaret and Mr. Schellenger.

Q. I will ask if you did see Miss Halterman sign her name.

A. No, I didn't.

Q. I hand you, Miss Terry, what purports to be the last Will and Testament of Margaret Halterman; only tell the Court what you know; I call your attention to Mrs. Halterman's signature at the end—what purports to be. her signature—and ask whether you know her signature when you see it.

A. No, all signatures look the same to me.

Q. Can you say this is her signature?

A. No, I can't. I stayed in the hall, and Mr. Schellenger called me in, and I signed my name and went right back out.

Q. Did you hear Mrs. Halterman say that was her Will?

A. No, she didn't say that.

Q. You are positive?

A. I am positive.

BY THE COURT:

Q. Did you ever see this paper that I hand you here purporting to be the Will of Margaret Halterman? Did you ever see that entire instrument before today?

A. Not that I know of.

Q. When you subscribed your name to this second page did you see the first page?

A. No, I' didn't.

Q. You remember signing your name to the second page?

A. Yes, I do; the only thing I know was where my name was.

Q. The two pages were not connected?

A. They were connected, but no other signatures.

Q. Your name was the first signature that appeared on this paper?

A. Yes, it was.

Q. The signature of Margaret Halterman was not on the paper at the time?

A. No, it wasn't.

Q. I think you testified that you did not at any time see Margaret Halterman sign this paper?

A. No, I didn't.

Q. Did you at any time hear her acknowledge this paper was her Last Will and Testament?

A. No, I didn't.

Q. If she had done so, you were in a position to hear her?

A. I just walked in and signed my name and walked out. I wouldn't have known if she said anything to Mr. Schellenger.

Q. You did not see her sign it in your presence or acknowledge it to be her Will?

A. No, I did not.

When the witness Terry concluded her testimony, it was ascertained that the witness Schellenger had departed, and the cause was continued until April 20, 1943, for the purpose of recalling the witness Schellenger, and on that date he was re-examined as if on examination in chief, his testimony was reduced to writing and is, in part, as follows:

BY MR. CARLISLE:

Q. Mr. Schellenger, I hand you an instrument in writing purporting to be the last will and testament of Margaret Halterman, to

which your name is attached as a witness, and ask if that is your name?

A. That is.

Q. Also, the name of Margaret Halterman purports to be signed at the end of the instrument; I will ask you if that is her signature?

A. Yes.

Q. I will ask further if Mrs. Halterman signed the will in your presence?

A. She did.

Q. Who else was present?

A. There wasn't anyone else there but this girl; I didn't know who she was at the time; just the two of us was the only ones present.

Q. The two witnesses, that is, two in addition to Mrs. Halterman?

A. Yes, sir.

Q. Regardless of who the girl was, or regardless of the fact that you did or did not know who she was, did she sign her name to the will?

A. Yes, sir.

Q. In your presence?

A. Yes, sir.

Q. In the presence of Mrs. Halterman?

A. She did.

Q. Did you likewise sign your name in Mrs. Halterman's presence and also in the presence of Juanita Terry?

A. I did.

Q. Did you do this at the request of Mrs. Halterman?

A. Yes, sir.

Q. Do you recall whether Mrs. Halterman acknowledge this to be her last will and testament?

A. She did.

Q. I will ask if at the time Mrs. Halterman made this will she was of sound mind and memory?

A. I think so.

Q. Was there any restraint, or did she appear to be under any undue influence?

A. No, sir.

MR. CARLISLE: I believe that's all.

Q. I might ask this further question. Did you explain to Miss Terry, the girl who testified to being present, that it was a will?

A. I think so.

BY THE COURT:

Q. Do you recall when Juanita Terry signed this instrument that the name Margaret Halterman was then on the will?

A. At the time she signed, she signed it in our presence.

Q. Mrs. Halterman did?

A. Yes, sir.

Q. Both of you were in the room when Mrs. Halterman signed it?

A. Yes, sir.

Q. And both of you were there when Mrs. Halterman acknowledged it to be her will?

A. Yes, sir. Mrs. Halterman had this girl there for that purpose.

Section 10504-3 GC, enumerates the requisite formalities for the execution of wills and testaments and this section is as follows:

"Except nuncupative wills, every last will and testament shall be in writing, but may be handwritten or typewritten. Such will shall be signed at the end by the party making it or by some other person in his presence and by his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature."

Section 10504-22 GC, establishes the procedural duty of the Probate Court after the testimony of the witnesses has been submitted, in the following language:

"If it appears that such will was duly attested and executed, and that the testator, at the time of executing it was of full age, of sound mind and memory, and not under restraint, the court shall admit the will to probate."

At the time this instrument was executed, May 26, 1939, the witness Terry was thirteen years and two months of age. The use of a witness under the age of majority to any instrument, and particularly to a will, is not encouraged but he is not rendered incompetent by reason of minority, and the general rule is stated in 1 Page on Wills (Lifetime Edition) Page 583, in the following language:

"As far as age is concerned, any person who was old enough to receive a just impression of the facts of execution and to relate them truthfully and with a reasonable degree of accuracy, could act as an attesting witness to a will. One who is under the age of majority may act as an attesting witness, minority not being a disqualification. There is, however, some authority for the rule that a witness under the age of fourteen is prima facie incompetent, while one over the age of fourteen is prima facie competent."

The testimony relating to the competency of the witness Terry is herewith set forth:

BY THE COURT:

Q. Do you know the nature of a Will?

A. I do now.

Q. Did you in 1939?

A. Well, I suppose I knew a general idea of them.

Q. What is the general idea?

A. What you want done with your personal property and belongings after you are dead.

Q. Your personal property and belongings?

A. I suppose.

Q. Is your idea that it has only to do with personal property, household goods and chattels, money and things of that kind?

A. Well, and real estate, I suppose.

Q. Did you know that in 1939?

A. I never thought much about it.

The witness Schellenger testified that he believed her to understand the nature of the transaction, that she had the appearance of being more than thirteen years of age, and that he considered her to be of sufficient age to act as an attesting witness. It would appear that this person was qualified at the time of the execution of the will to testify with reference to its execution at the hearing on the application for the probate thereof.

A more serious question is presented by the conflict of the testimony of the witnesses, heretofore set forth in detail, concerning the execution of the instrument in question.

It is established in **In re Hathaway, 4 Oh. St., 383**, that an application to admit a will to probate is not an adversary proceeding and that the evidence required to admit a will to probate must show a prima facie case in favor of its validity.

A case similar to a situation of this kind was presented to the Court of Common Pleas, Franklin County, Ohio, and in an opinion reported as **In re Watts, 19 O. N. P. (N.S.), 225 (1916)**, the Court stated the question then under consideration to be:

"The question therefore is whether the testimony of one competent witness to the will, who testified to all the formalities by the testator and both attesting witnesses to the due execution of will is sufficient proof, if believed, to admit the will to probate, even though the other witness to the will fails, to remember, or denies compliance by the testator with one or more of the essential statutory requirements to its due execution."

In considering the question the Court in **In re Watts, supra**, held:

"While the statute relative to probating wills (§10516 GC.) re-

quires the court to cause the witnesses to the will to come before the court and be examined and their testimony reduced to writing and filed, the statute does not require the will to be proved by the testimony of such witnesses. In truth, the due execution of the will may be proved and the will admitted to probate by witnesses independent of, and even in contradiction to the testimony of the attesting witnesses. The law does not require the will to be proved as well as attested by a specific number of witnesses. A will may be proved by one witness, though it must be attested by two. In other words, the number of witnesses required to prove a will may be less than the number of subscribing witnesses demanded by the statute." (Citing authorities from other jurisdictions).

The case of **In re Watts, supra,** is distinguished from **In re Pittis, 29 O. N. P. (N.S.), 41 (1930),** paragraphs two and three of the syllabus reading as follows:

"2. A will is properly subscribed by the witnesses when they sign their names thereto in the presence of the testator, but it is not properly attested unless the witnesses see (1) the testator sign his name thereto or (2) hear him acknowledge either the paper as his will, or his signature thereto.

"3. ˙ A paper writing, signed by the maker without the presence of two subscribing witnesses, can not be admitted to probate as a last will and testament, where it is shown that the witnesses did not know that it was a will they were attesting, and no acknowledgment of the signature thereon as his own, was made by the maker to the witnesses."

In the case of **In re Pittis, supra,** it was apparent that the instrument was not attested in the presence of either of the witnesses:

"They did not see the decedent sign his name, which is one way attesting a will, nor did they hear the testator acknowledge his signature, or hear him say it was his will. There was no attestation of acknowledgment."

Presumably a different result would have obtained had one of the witnesses been able to testify as to the proper execution of this instrument, having in mind the rule announced in **In re Watts, supra,** decided in 1916.

The situation was interestingly and logically discussed in Mc-**Williams et, v. The Central Trust Company, 51 Oh. Ap., 246 (1935),** and the result of the court's decision was well stated in syllabus.

"1. A proceeding to probate a will is not an adversary one; all that can be required is a prima facie case, and when such appears

by substantial evidence it is mandatory upon the court to admit the will to probate.

"2. In a proceeding to probate a will it is not the duty of the court to weigh the evidence for or against the validity of the will, further than to determine whether there is substantial evidence tending to establish the essential facts necessary for the probate thereof as set forth in §10504-22 GC."

The application for the probate of this instrument contains the names of the next of kin of the decedent and it appears that the next of kin are seventeen in number and all are either nephews or nieces, Clara Terry, a niece and one of the next of kin, is the mother of Juanita Terry, one of the subscribing witnesses.

The decedent, in the instrument purporting to be her last will and testament, after making certain bequests to a church and to one person not one of the next of kin, established a trust for educational purposes of the residue of the estate for Dorothy May Wiseman and Kathleen Pearl Wiseman. (They are the children of Walter C. Wiseman, the proponent of the instrument and a nephew of the decedent).

Thus, in substance, the decedent, in this instrument, recognized no next of kin except a nephew, Walter C. Wiseman, and then only by establishing a trust for educational purposes for his children. It would be to the financial interests of the remaining sixteen nephews and nieces if the probate of this instrument were refused.

A consideration of the foregoing authorities and statutes indicates the rule to be applied to a situation where one witness testifies that the will was properly executed and the other witness testifies to the contrary is as follows:

A will must be in writing and signed at the end by the person making it or by some other person and by his express direction, and be attested and subscribed in the presence of such-party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature, and if it appears that such will was duly attested and executed, and that the testator at the time of executing it was of full age, of sound mind and memory, and not under restraint, the mandatory duty rests upon the court to admit the will to probate. The due attestation and execution shall appear to the court if a prima facie case in favor of its validity, in that particular, is established. A prima facie case in that particular shall be deemed established if a witness "can testify to a compliance with all the requirements of the statute as to the execution, acknowledgment and attestation. Any one of the subscribing witnesses may prove the execution of the will and its due attestation by himself and the others; and if his testimony is satisfactory, it is sufficient." **In re Watts, supra.**

"If the law were otherwise than as above indicated, every will and its due execution would be at the mercy of the subscribing witnesses either to sustain or overthrow it at pleasure. Hence, the law does not permit one attesting witness, by failure of memory, or false swearing or the like, to defeat the will of the testator; but the testimony of the witnesses, whether one or more, and the surrounding circumstances, if they show that all the solemnities required by statute in the execution of the will have been observed, will be sufficient, if believed, to admit the will to probate." In re Watts, supra.

The liberal practice prevailing in Ohio regarding the admission to probate of instruments purporting to be wills is indicated by the following cases: In re Ludlow, 6 O. D. (N.S.), 344, 4 N. P., 155; In re Stacey, 6 O. D. (N.P.), 499; In re Stocker, 26 O. N. P. (N.S.), 112; In re Watts, 19 O. N. P. (N.S.), 225; McWilliams, et, v. Trust Company, 51 Oh. Ap., 246.

In the instant case the record discloses substantial evidence by which "it appears" to the court that all the elements required by §10504-22 GC were shown, and a prima facie case having been made as to the validity of the will, insofar as its due execution is concerned, it is the mandatory duty of this court to admit the same to probate, and it is so ordered.