For the foregoing reasons, briefly stated, I feel compelled to dissent in this case.

ROOSA, EXR., APPELLANT, *v.* WICKWARD ET AL., APPELLEES.

214

(No. 7185—Decided May 19, 1950.)

*Mr. Fred G. Reiners,* for appellant.
*Messrs. Thorndyke & Becker,* for appellees.

HILDEBRANT, J.   This is an appeal on questions of law from an order of the Probate Court, refusing to admit to probate a paper writing purporting to be the last will and testament of Minnie May Baker, deceased, on the ground that such purported will was not executed according to law.

The paper writing offered for probate, hereinafter referred to as the will, is typewritten, testamentary in character, ending in a testimonium clause denominating it "my last will and testament," and signed at the end thereof.   The signature is followed by an attestation clause in proper form, signed by two witnesses, so that on its face it appears to have been the product of a professional scrivener, and appears to be without substantial defect as to form.

The general principles governing an application to

probate a will have been set forth in *In re Will of Elvin,* 146 Ohio St., 448, 66 N. E. (2d), 629, as follows:

"Under Sections 10504-18 and 10504-22, General Code, the following principles govern the hearing on an application to admit a will to probate: (a) No issue is presented for a contest of the will between its proponents and opponents; (b) opponents of the will may cross-examine witnesses fully upon the dueness of attestation and execution, the mental capacity of the testator and undue influence, but are not allowed to call witnesses against the admission of the will to probate; (c) a prima facie case in favor of the validity of the will is all that is required, and when all the evidence shows as a matter of law that such a prima facie case is made out, the court must admit the will to probate, even though the evidence is conflicting."

The question before the court then is whether a prima facie case in favor of the validity of the will is presented by the record.

There can be no doubt that the genuineness of the signature of the testator and that she was of full age, sound mind and memory and not under any restraint have been established by the proof of record.

Equally well established is the genuineness of the signatures of the attesting witnesses, Maud C. Myers, deceased, and Jennie King, whose testimony is later detailed herein. Satisfactory proof of the signature of the deceased witness, Maud C. Myers, having been made, its effect is, in 41 Ohio Jurisprudence, 405, Section 224, stated to be:

"* * * Proof of the handwriting of the attesting witness in such case raises the presumption that all the statutory requirements of execution have been complied with—as, for example, that the purported will has been duly acknowledged in the presence of that witness."

Further citation seems unnecessary, so it appears that the signature of Maud C. Myers, deceased, as an attesting witness, furnishes substantial evidence in favor of the validity of the will in every respect.

The refusal of the Probate Court to admit the will to probate must then be based on the testimony of the surviving attesting witness, Jennie King. Pertinent parts of her testimony we now set forth in detail:

"Q. Now directing your attention to October 1935, will you tell us what, if anything, Minnie Baker asked you to do in connection with signing a paper? A. She came to my apartment and asked me to come over to sign her will.

"Q. Will you tell us whether or not you did go to her apartment to sign her will? A. I did. I did.
" " * * *

"Q. * * * are you referring to this paper that you hold in your hand, which is dated October 11th or 12th, 1935, headed last will and testament, and contains Minnie May Baker's signature? A. That's the one.

"Q. Is that the paper to which you refer? A. But it was folded in such a way that I couldn't see her signature.

"Q. I see. Will you state whether or not Minnie May Baker handed you this paper in her apartment? A. It was laying on the table.

"Q. And will you state whether or not Minnie May Baker said 'This is my will and I want you to sign it'? A. Yes, she did.

"Q. And will you state whether or not this signature of Miss Jennie King on this paper is your signature? A. Yes, sir, it is.

"Q. Will you state whether or not the signature of Mrs. Maud C. Myers was on this paper when you signed it? A. Yes, it was on when I signed it.
" " * * *

"Q. And did you see Mrs. Maud C. Myers there at that time? A. No, she wasn't there; she had signed it before I did.

"Q. You don't know when she signed? A. No.

"Q. I mean her signature appeared on this paper writing at the time you signed it? A. Yes.

"Q. Now, you stated at the time you signed this paper writing you did not see the signature of Minnie May Baker? A. I did not.

"Q. On this writing. You don't know if the signature Minnie May Baker was on this paper writing purporting to be her last will and testament at that time or not? A. I didn't see it.

"Q. You did not see it. Are you familiar with the signature of Minnie May Baker? A. No. I'm not.

"Q. You don't know then if that is the signature of Minnie May Baker or not? A. No, I never saw her signature.

"Q. You never saw her signature. You did not see her signature on this paper writing at the time you signed it? A. No.

"Q. Nor did you ever see her signature at any time previous to the time you signed this paper writing? A. I never did.

"Q. Now, do you know the signature of Mrs. Maud C. Myers? A. No, I didn't know her.
"* * * *

"Q. She was not present at the time you signed it, and Mrs. Minnie Baker did not sign this paper writing in your presence? A. Not in my presence, no.

"Q. And at that time you did not see her signature any place on this paper? A. No, because it was laid in such a way that I couldn't see it.

"Q. In other words, it was folded over and you don't know whether it was on there or not? A. No.
"* * * *

"Q. Will you state whether or not when Minnie

May Baker asked you to sign your name on this paper she told you what it was? A. Yes, she did.

"Q. What did she tell you it was? A. She said it was her will.

"* * *

"Q. When she told you that was her will she made no attempt to sign it in your presence, did she? A. No.

"Q. And at that time when she told you that was her will you did not see her signature on that paper writing? A. No, I didn't.

"* * *

"Q. When you signed this paper will you state whether or not it was so folded that it was impossible to see this line upon which Mrs. Baker's name appears? A. Yes, I couldn't see it.

"* * *

"Q. You don't know if that signature was on there or not though, do you, Miss King? A. No.

"Q. It was folded in that manner [indicating], so all you saw was Mrs. Maud Myers' signature? A. That's all.

"Q. So of your own knowledge you don't know that Mrs. Minnie Baker's signature was there? A. No, I don't."

Section 10504-3, General Code, provides in part:

"* * * Such will shall be signed at the end by the party making it or by some other person in his presence and by his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature."

Summarizing this testimony, it is apparent that Jennie King did not see testatrix sign the will, did not see any signature on the will when signing as an attesting witness, because of the manner in which it was folded, and that testatrix did not by the spoken word acknowledge her signature to the will to the

witness, although she did acknowledge the paper writing being attested by the witness at her request, to be her will.

Based on this testimony, the Probate Court found, as recited in the entry, that the paper writing purporting to be the last will and testament of Minnie May Baker, deceased, which was presented for probate, was not executed according to law and ordered same to be refused of probate.

In so doing, it appears the Probate Court decided the issue of due execution of the will against its validity, as upon contest, thereby depriving the proponents of their right of trial by jury on that issue as provided by law. In so doing, the court must necessarily have weighed the evidence and given effect to the testimony of Jennie King to overcome the first appearance created by examination of the will in proper form, properly executed and proved through the signature of the deceased witness coupled with all the surrounding circumstances in favor of the validity of the will, as shown by the testimony of Jennie King, herself. In other words, it appears the Probate Court did not confine its consideration to whether a prima facie case in favor of the validity of the will had been established, but went beyond that field of inquiry into one reserved for ultimate determination by a jury under the law of contest.

It seems appropriate to observe that we deem it completely illogical to contend that by deciding the larger issue beyond the scope of this inquiry, an adverse finding on the lesser inquiry as to prima facie case is necessarily included.

What is a prima facie case?

In 43 Words and Phrases, 543, it is stated:

"A 'prima facie case' is that state of facts which entitles the party to have the case go to the jury. *Miller* v. *Semler,* 3 P. (2d), 987, 988, 137 Or., 610.

"A 'prima facie case' is one in which the evidence in favor of a proposition is sufficient to support a finding in its favor, if all of the evidence to the contrary be disregarded. *Schallert* v. *Boggs* (Tex.), 204 S. W., 1061, 1062.

" 'Prima facie case' means case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded. *In re Hoagland's Estate,* 253 N. W., 416, 126 Neb., 377."

And, at page 544, *ibid.*, it is stated:

"Proceeding to probate a will is not adversary one, and all that can be required is a prima facie case, and, when such appears by substantial evidence, court must admit will to probate. Gen. Code, Sections 10504-15, 10504-16, 10504-18, 10504-22, 10504-35 to 10504-40, 12080 to 12083. 'Prima facie case' is one in which evidence in favor of a proposition is sufficient to support a finding in its favor, if all of the evidence to the contrary be disregarded. 'Prima facie case' is also defined as that state of facts or proof which entitles the party to have his case go to the jury. *McWilliams* v. *Central Trust Co.,* 200 N. E., 532, 534, 51 Ohio App., 246."

In the last cited case the court, at page 251, said:

"Here, by analogy, we have the test for a probate proceeding. If the matter is one to be submitted to a jury, and sufficient evidence is offered on all the issues to send those issues to the jury, we have a prima facie case, even though there may be some parts of the testimony of the proponent's witnesses which tend to negative one or more of the essentials to be established."

At page 252, the court pointed out:

"In New York, where the practice is similar to that in Ohio, it has been held that a will may be admitted although in direct opposition to the testimony of both

subscribing witnesses. *In re Van Houten's Will,* 15 Misc. Rep., 196, 37 N. Y. Supp., 39.

"A very liberal practice has prevailed among Probate Courts in Ohio, as indicated in the following opinions: *In re Will of Ludlow,* 6 O. D. (N. P.), 344, 4 N. P., 155; *In re Will of Stacey,* 6 O. D. (N. P.), 499; *In re Will of Stocker,* 26 N. P. (N. S.), 112."

With reference to the quantum of proof necessary to admit a will to probate, we glean from a number of Ohio cases cited below that on application for probate of a will, the court may give full weight to testimony of one subscribing witness and disregard testimony of the other; that both subscribing witnesses to a will need not testify positively with respect to due execution of the will; that where an attesting witness to a will does not see testator subscribe his name to it, acknowledgment of that fact by the testator in hearing of the witness, which is required by statute, is not required to be made in any particular words or any specified manner, but, if by sign, motion, conduct, or attending circumstances, attesting witness is given to understand by testator that he had already subscribed the paper as his will, it is a sufficient acknowledgment; and that, while the statute relative to probating wills requires the court to cause the witnesses to the will to come before the court and be examined and their testimony reduced to writing and filed, the statute does not require the will to be proved by the testimony of such witnesses. In truth, the due execution of the will may be proved and the will admitted to probate by witnesses independent of and even in contradiction to the testimony of the attesting witnesses. The law does not require a will to be proved as well as attested by a specific number of witnesses. A will may be proved by one witness, though it must be attested by two. In other words, the number of witnesses required to prove a will may be less than

the number of subscribing witnesses demanded by the statute. A presumption of due execution of a will arises from the fact of attestation, reciting an observance of all statutory requirements, in the absence of contest as to the genuineness of the signatures of testator and witnesses.

We call attention to the following citations: *In re Wood's Will,* 67 N. E. (2d), 11; *In re Will of Watts,* 19 N. P. (N. S.), 225, 27 O. D., 87; *McWilliams* v. *Central Trust Co.,* 51 Ohio App., 246, 200 N. E., 532; *Blagg* v. *Blagg,* 55 Ohio App., 518, 9 N. E. (2d), 991; *In re Will of Fisher,* 67 Ohio App., 6, 35 N. E. (2d), 784; *In re Will of Hathaway,* 4 Ohio St., 384; *In re Halterman,* 27 Ohio Opinions, 521, 39 Ohio Law Abs., 43; *In re Blickensderfer,* 28 Ohio Opinions, 42, 40 Ohio Law Abs., 217; 41 Ohio Jurisprudence, 400, Section 214 *et seq.*

From the record presented, we conclude proponents have sustained the burden of making a prima facie case in favor of the validity of the will, and it was prejudicial error for the Probate Court to refuse its admission to probate.

The judgment is, therefore, reversed, and the cause remanded to the Probate Court with instructions to admit the proffered will to probate.

Ross, P. J., HILDEBRANT and MATTHEWS, JJ., concur in the syllabus, opinion and judgment.