## BLAGG ESTATE OF, In Re v BLAGG et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1433. Decided Dec 28, 1936

A. K. Meck, Dayton and John W. Dale, Dayton for appellant.

Sidney G. Kusworm, Dayton, for appellees.

## OPINION

By CRAIG, PJ.

A document purporting to be the last will and testament of Harrison Reese Blagg, who died in 1936, was presented for probate in the Probate Court of Montgomery County, which refused to admit it to probate. This ruling was upheld by the Common Pleas Court in hearing on appeal.

Lena Kah Blagg, widow of the deceased, filed her notice of appeal on questions of law and fact to this court. A motion to dismiss the appeal for failure to file an assignment of errors heretofore has been overruled with the suggestion that further discussion be had as to whether the appeal in this court is on questions of law or of law and fact. None has been forthcoming and the court will treat the appeal as one on questions of law.

Ludmilla T. Hyll had been employed by the decedent as president of the H. R. Blagg Company since January 30, 1922. On June 28, 1934, the decedent dictated to Miss Hyll certain portions of his will to be filled in on a will form. A few minutes after the dictation was finished the will was prepared and placed on Mr. Blagg's desk. The testimonium and attestation clauses on the will are as follows:

"IN WITNESS WHEREOF, I have set my hand to this, my LAST WILL AND TESTAMENT, at Dayton this 28th day of June in the year of Our Lord, One Thousand Nine Hundred thirty-four.

(Signed) Harrison Reese Blagg

"The foregoing Instrument was signed, published and declared by the said Harrison Reese Blagg as and for his Last Will and Testament, in our presence and at his request, and in his presence, and in the presence of each other, we hereunto sub-

scribe our Names as Attesting Witnesses, at Dayton this 28th day of June A. D. 1934.
(Signed)

Robt J. Reist, resides at Dayton, Ohio.
Ludmilla T. Hyll, resides at Dayton, Ohio."

An hour and a quarter to an hour and a half later decedent came out of his office with the document in his hand and said, "Miss Hyll, will you witness this?" Before Miss Hyll could get to the place where decedent was a telephone call came in which she was required to answer and before she had finished this call, decedent had spoken to Mr. Robert Reist, also an employee of the H. R. Blagg Company and asked him to sign the document. Reist knew that decedent was contemplating making a will but did not know that the document presented to him to sign was a will. When Reist saw the document it was on the desk in such a way that he could have seen decedent's signature at the end of the will had he looked at the particular place where it was.

He saw the attestation clause in the will which was immediately above the space where subsequently he signed his name, but did not read it. Reist says he did not know what he signed and that he had signed numerous papers for Mr. Blagg. It appears that he had signed reports and schedules, which Mr. Blagg also had signed and knew that Blagg would not request his signature on anything that was not proper. It is difficult to conceive that a person who is sui juris would sign any paper without some knowledge as to what it is. Reist says that Blagg asked him "Robert, will you put your signature on this paper?" Reist assented and put not only his name at the place decedent pointed out to him on the paper, but after the printed words "resides at" he wrote "Dayton, Ohio". He does not say positively that decedent's name was not on the will, but says he does not recall, though he could have seen it had he looked. Mr. Reist was in process of signing when Miss Hyll stopped her immediate work of answering the telephone call and joined decedent and him. Miss Hyll states positively that decedent's signature was on the will at that time. In view of her positive testimony and Reist's failure to recall whether or not the signature was there, we must conclude that decedent signed the will before either of the witnesses signed their names. Immediately after Reist signed, Miss Hyll signed her name and city of residence.

It was held by both the Probate Court and the Common Pleas Court that the requirement of §10504-3 GC that the witnesses either see the testator subscribe or hear him acknowledge his signature was not met, and that therefore the will should not be admitted to probate.

One of the early leading cases on this subject in this state is **Raudebaugh v Shelley et, 6 Oh St 307**, where it is held:

"Where an attesting witness to a will did not see the testator subscribe his name to the instrument, the acknowledgement of the fact by the testator in the hearing of the witness, which is requisite, is not required to be made in any particular words or any specified manner, but if, by signs, motions, conduct, or attending circumstances, the attesting witness is given to understand, by the testator, that he had already subscribed the paper as his will, it is a sufficient acknowledgement."

Another leading case is **Haynes v Haynes, 33 Oh St 598**, where it is held:

"1. Where a will has been signed for the testator by another person, in his presence and by his express direction, in the absence of the attesting witnesses, the acknowledgement of the fact by the testator in the hearing of the witnesses, which is requisite, is not required to be made in any particular form of words, or any specified manner; but, if by signs, motions, conduct, or attending circumstances the attesting witnesses are given to understand, by the testator, that he acknowledges the signature thereto as his, and the instrument itself as his will, it is sufficient.

"2. It is not necessary, in addition to such an acknowledgement, that the testator should further acknowledge to each or both the attesting witnesses, that such signing was done in pursuance of his previous express authority and in his presence by the person signing for him.

"3. The fact of such signing and the authority to sign, when done in the absence of the attesting witnesses, may be shown by the acknowledgement to the witnesses, or by other competent testimony, or may be presumed from the facts and circumstances of the case."

It is well established in this state that acknowledgement of decedent's signature or mark may be implied as well as express, taking into consideration the facts and circumstances of the case.

Keyl v Feuchter, 56 Oh St 424, does not change this rule, for in that case the only available evidence was that testator's name was not on the document when the witnesses signed. Clearly the testator could not acknowledge a future event.

In the absence of explicit and definite testimony a witness should not be permitted to contradict that to which he has subscribed. The testator is not here to dispute witness' testimony. As is said in Robertson v Robertson (Court of Appeals of Kentucky, 1930) 24 S. W., (2d), 282:

"The privilege of disposing of one's estate by will is a valuable right, and it has been written that he should not be deprived of this right upon slight, remote, or unsubstantial testimony."

Simply because Reist can not recall whether or not testator's signature was on the document, although he could have seen it if he had looked and because he was so lax as not to ascertain what he was signing should not deprive testator of disposing of his property by this will.

We have made an independent search of the authorities and find the rule to be generally that acknowledgment of the signature to a will may be implied as well as express. A very helpful case and a persuasive one in this matter is Finucane v Finucane, decided by the Supreme Judicial Court of Massachusetts, January 4, 1935, and reported in 193 N E 553. In that case the testator, who was about to prepare a will, talked with one Robinson concerning it and asked him to witness it. The testator proceeded to make out his will, handed it to Robinson who read it. Testator said that it was his will and signed it in Robinson's presence. Earlier in the day testator had made an arrangement with a Mrs. Littlejohn and her daughter to "sign a paper for him" and he and Robinson went to the Littlejohn home. There the mother, daughter and Robinson at testator's request and in his presence signed a paper which testator took from his pocket. Testator did not say that the paper which they signed was his will or that they were signing the paper as witnesses to his signature. He told the Littlejohns that they could read the paper signed by him, which he produced and they read and signed it. The Court says at page 554:

"The production of the instrument and the request that the Littlejohns should sign imported that the signature to be witnessed was Finucane's signature."

In the case at bar we hold that testator's signature was affixed to the document before either witness signed; that the production of the instrument and the request that the witnesses sign imported that the signature to be witnessed was that of the testator and that he acknowledged it to be his.

Undoubtedly each case of this sort must stand on its own facts. We are of opinion that the facts and circumstances in this case show that there was an implied acknowledgement of his signature by testator to both witnesses and that the requirement of the statute was met.

The judgment of the Common Pleas Court is reversed.

HORNBECK and BARNES, JJ, concur.