OPINION
Appellants, Douglas Darrel Groves, Douglas Darrel Groves, II, Keith Russell Groves, William Joseph Potocar, and Ryan Joseph Carthen, appeal two judgment entries of the probate division of the Lake County Court of Common Pleas. The first judgment entry, dated April 26, 1999, rendered a jury verdict in favor of appellee, Elisa Marie Potocar. The second judgment entry, dated May 25, 1999, denied appellants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
This case involves a dispute over the last will and testament of Esther Marie Potocar ("Mrs. Potocar"). Appellants, Mrs. Potocar's two sons and three grandsons, contend that Mrs. Potocar's will was not properly attested; that Mrs. Potocar was not competent to execute her will because she did not understand the nature and extent of her assets; and, that appellee, Mrs. Potocar's daughter, exercised undue influence over her.
Appellee suffers from juvenile onset diabetes. As a consequence of her diabetes, appellee has had both of her legs amputated, kidney failure, a kidney and pancreas transplant and cancer. Appellee's hearing and eyesight are also failing. Appellee lived with Mrs. Potocar and has no source of income other than disability payments.
With respect to the drafting of the will, appellee testified that she assisted her mother. Mrs. Potocar provided appellee with written instructions concerning her will, which appellee copied in her own handwriting at Mrs. Potocar's request because of the poor quality of Mrs. Potocar's penmanship. Appellee then took her copy of Mrs. Potocar's notes to Sandra Dray ("Ms. Dray"), an attorney who had previously represented appellee's brother, appellant William Joseph Potocar. Ms. Dray then drafted a last will and testament for Mrs. Potocar, which Mrs. Potocar signed on July 27, 1995.
Ann Madio ("Ms. Madio") and Madelyn Fox ("Ms. Fox") witnessed Mrs. Potocar's will. Ms. Madio was a patient representative at the Cleveland Clinic Foundation ("Cleveland Clinic"). Her responsibilities included witnessing powers of attorney and last wills and testaments. She witnessed approximately one hundred powers of attorney every year, as well as five to ten wills. Ms. Fox testified that Ms. Madio had asked her to accompany her to Mrs. Potocar's room specifically to witness Mrs. Potocar's will. Ms. Madio could not recall the circumstances surrounding the execution of Mrs. Potocar's will; however, she testified at trial as to her practice when she witnessed documents. First, she spoke to the patient to confirm that he was not over-medicated and not suffering from Alzheimer's. She then read the document to the patient. After reading the document, she asked the patient if he understood the nature of the document. If the patient confirmed that he understood the document, Ms. Madio gave the document to the patient to sign. Ms. Madio further testified that if her signature appeared on a document, she had formed an opinion that the patient had understood what he was signing.
Ms. Fox testified that she also had been an employee at the Cleveland Clinic. Her responsibilities included witnessing eight to ten health-care powers of attorney and/or living wills per day. When she witnessed Mrs. Potocar's will, she was not in a position to see Mrs. Potocar put pen to paper, but she did see Ms. Madio hand Mrs. Potocar a pen and then saw the latter make the motions of signing her name. Finally, when she was given the will to witness, Ms. Fox saw Mrs. Potocar's signature on the will.
Under the terms of the will, appellee received the bulk of Mrs. Potocar's estate, including Mrs. Potocar's house; her 1995 Ford Escort; all of her jewelry with the exception of her diamond necklace and one half of Mrs. Potocar's Third Federal Savings' certificate of deposit.
Appellants filed a complaint contesting the will on March 17, 1997. A jury trial was held and on April 26, 1999. The jury returned a verdict in favor of appellee, and the trial court entered judgment accordingly. On May 10, appellants filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied and the present appeal ensued.On appeal, appellants raise the following assignment of error:
 "[1.] The trial court erred when it denied [appellants'] motion for directed verdict and judgement not withstanding (sic) the verdict, or in the alternative, for a new trial holding that [appellants] failed to bring forth evidence showing that the last will and testament of Esther M. Potocar was improperly executed."
Appellants raise three issues with respect to their one assignment of error. First, that Mrs. Potocar's will was not properly attested. Second, that Mrs. Potocar was not aware of the nature and extent of her assets; therefore, she lacked testamentary capacity. Third, that appellee exercised undue influence over Mrs. Potocar.
Appellants' contend that Mrs. Potocar's will was not properly attested. R.C. 2107.03 requires that a "* * * will shall be signed at the end by the party making it, or by some other person in such party's presence and at his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature." In Parksv. Kerns (Jan. 11, 1984), Jefferson App. No. 82-J-32, unreported, 1984 WL 6519, at 1, the court held that "[i]t is not absolutely necessary that a testator sign a will in the presence of the witnesses. The validity of such signature may be presumed `from the facts and circumstances of the case.' (Haynes v. Haynes (1878), 33 Ohio St. 598). This presumption must be overcome by something more than `slight, remote, or unsubstantial testimony.' (Blagg v. Blagg (1936), 55 Ohio App. 518, 522)."
In Blagg, the testator signed his will in his office. He then came out of his office and handed his will to a Mr. Reist, who did not know that the document presented to him was a will, nor could he say positively that the testator's signature was on the will. Reist saw the attestation clause, but did not read it. Reist relied on the fact that he signed numerous reports and schedules for the testator, and he knew that the testator would not ask him to sign anything that was not proper. Blagg,55 Ohio App. at 520.
Testator's secretary, Miss Hyll was present when Reist signed the will. She testified that the testator's signature was on the will at that time. Id. Miss Hyll knew that the document was the testator's will because he had dictated portions of it to her approximately ninety minutes prior to asking her to sign it. Id. at 519.
The Blagg court upheld the validity of the will on the grounds that "[i]t is well established in this state that acknowledgment of decedent's signature or mark may be implied as well as express, taking into consideration the facts and circumstances of the case." Id. at 522. The court noted that simply because Reist could not recall whether the testator's signature was on the document, the testator should not be deprived of the right of disposing of his property by that will. Id.
In the case at hand, appellants have failed to present evidence that overcomes the presumption of the validity of Mrs. Potocar's signature. Neither witness to the will had any interest in Mrs. Potocar's estate. Both witnesses regularly witnessed documents in the course of their work. Ms. Madio testified that she had a regular practice in witnessing documents that included confirming that the patient was competent to sign the document. She further testified that if her signature appeared on a document as that of a witness, it meant that the document had been signed in her presence. Additionally, both witnesses knew that the document they were subscribing to was a will.
The only evidence supporting appellant's contention that the will was improperly executed was Ms. Fox's testimony that she was not actually looking over Mrs. Potocar's shoulder to see her put pen to paper. However, she did see Ms. Madio hand Mrs. Potocar a pen, and then saw the latter go through the motions of signing her will. When Ms. Madio subsequently handed Ms. Fox the clipboard, she saw Mrs. Potocar's signature on the will. Ms. Fox then signed the will as an attesting witness. Clearly, the holding in Blagg indicates that the fact that Ms. Fox was not looking over Mrs. Potocar's shoulder as she signed her will is insufficient to invalidate it. Given this set of facts, and no suggestion of any fraud having been committed, this court will not reverse the trial court's finding that Mrs. Potocar's will was properly attested.
Appellants' second claim is that Mrs. Potocar lacked testamentary capacity. In Lah v. Rogers (1997), 125 Ohio App.3d 164, 175, this court identified the elements of testamentary capacity:
 "`Testamentary capacity exists when the testator has sufficient mind and memory: First, to understand the nature of the business in which he is engaged; second, to comprehend generally the nature and extent of his property; third, to hold in his mind the names and identity of those who have natural claims upon his bounty; fourth, to be able to appreciate his relation to the members of his family.'" Quoting Niemes v. Niemes (1917), 97 Ohio St. 145 at paragraph four of the syllabus.
Appellants contend that Mrs. Potocar lacked testamentary capacity because she failed to understand the nature and extent of her property. On the contrary, the record here supports the conclusion that Mrs. Potocar had an excellent grasp of the extent of her property. Her will included references to all of her significant assets as well as her tools, her stamp collection, and her Hummel plates.
Appellants claim that Mrs. Potocar bequeathed a $250,000 trust fund to appellee that did not exist at the time of the execution of the will. It appears from the record, however, that Mrs. Potocar's former husband owed her $250,000 from a divorce settlement. While it might have been wishful thinking on the part of Mrs. Potocar to expect that her former husband would settle this debt subsequent to the execution of her will, it does not demonstrate that Mrs. Potocar failed to understand the extent of her property.
Further, there was a significant amount of testimony indicating that Mrs. Potocar, on the day she executed her will, engaged in every day activities and was fully aware of her surroundings. Mrs. Potocar got out of bed, sat up, fed herself, used the bathroom without assistance, walked down to the lobby, talked on the phone, and complained about having to wait so long for Ms. Madio to arrive to witness her will. With respect to Mrs. Potocar's state of mind on the day she executed her will, her sister-in-law testified that "She was as she always was, I mean, she was Esther."
In addition to identifying most, if not all of her assets her in will, Mrs. Potocar also identified all of her children and grandchildren and her relationship to them in her will. In short, there is an abundance of evidence to indicate that Mrs. Potocar had testamentary capacity at the time she executed her will.
Finally, appellants contend that appellee exercised undue influence over Mrs. Potocar. The elements of undue influence are set forth inKrischbaum v. Dillon (1991), 58 Ohio St.3d 58, 65: (1) a susceptible party; (2) another's opportunity to exert influence; (3) the fact of improper influence exerted or attempted; and (4) the result showing the improper influence.
This court agrees that appellants have demonstrated the second element required for a showing of undue influence. It would seem indisputable that appellee had the opportunity to exert influence over her mother, since Mrs. Potocar relied on appellee to assist her in handling her financial matters and Mrs. Potocar and appellee resided in the same house and spent most of their time together.
Appellants, however, have failed to demonstrate the existence of the other three elements of undue influence. First, although Mrs. Potocar was admittedly ill at the time that she executed her will, appellants have not demonstrated that Mrs. Potocar was physically or mentally impaired to the extent that she would have been a susceptible party.
Second, appellants have produced no evidence that appellee attempted to improperly influence her mother in making her will. Appellants have demonstrated that appellee was extensively involved with the drafting of Mrs. Potocar's will, but they have not shown that appellee did anything other than carry out the wishes of her mother. While it would have been preferable for Mrs. Potocar to have dealt directly with the attorney who drafted her will, the mere fact that appellee acted as an intermediary does not in and of itself show that appellee exerted improper influence.
Finally, appellants have failed to prove that the will executed by Mrs. Potocar shows improper influence with respect to the distribution of the assets contained in her estate. In West v. Henry (1962),173 Ohio St. 498, 511, the Supreme Court of Ohio noted that to invalidate a will as a result of undue influence, "it must be shown that the undue influence resulted in the making of testamentary dispositions which the testator would not otherwise have made." Mrs. Potocar's single largest asset was her house. Under the circumstances, considering the state of appellee's health, her limited financial resources, the fact that her financial situation is unlikely to ever improve, and her close relationship with her mother, it would seem an entirely legitimate desire on the part of Mrs. Potocar to want to provide appellee with a permanent residence as well as the means to maintain it. Appellants failed to present any arguments that Mrs. Potocar would have made different dispositions of her assets, but for the influence of appellee.
Appellants have a heavy burden on appeal. They are appealing the trial court's denial of their motion for judgment notwithstanding the verdict. The Supreme Court of Ohio reiterated its position that the test for granting a motion for judgment notwithstanding the verdict is the same as the test for granting a motion for a directed verdict:
 "`The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witness is for the court's determination in ruling upon either of the motions.'" Gladon v. Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 312, 318, quoting Posin v. A. B. C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275, citing McNees v. Cincinnati Street Ry. Co.
(1949), 152 Ohio St. 269.
This court, therefore, must construe the evidence and the facts most strongly in favor of the appellee. In doing so, we conclude that there is substantial evidence to support the appellee's case.
For the foregoing reasons, appellants' assignment of error is not well-taken, and the decision of the trial court is affirmed.
 ______________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., concurs, O'NEILL, J., dissents.